ALEXANDER RIDGEWAY *et al.*

*v.*

ROBERT UNDERWOOD *et al.*

1. DEVISE—*time when the right of survivorship applies.* The rule which considers a gift to survivors simply as applying to objects living at the death of the testator, is confined to those cases in which there is no other period to which such survivorship can be referred, Where such gift is preceded by a life, or other prior interest, it takes effect in favor of those who survive the period of distribution, and those only.

2. Where a testator gave his wife an interest in his land during her life, in lieu of dower, for her support, and then provided that, at the death of his wife, and on his youngest child coming of age, the same should be sold and the proceeds divided among his seven youngest children, their heirs and assigns forever, and that, "if one or more of such children should die before inheriting his, her or their inheritance, to be equally divided amongst the remainder of the seven:" *Held*, that the right of survivorship would be referred to the period of distribution, which was after the death of the widow and the majority of the youngest child, and not to the time of the testator's death.

3. SAME—*word inheritance construed.* In such a devise, the words "inheriting" and "inheritance" refer to the same thing—the distributive share of the proceeds arising from the sale of the land. Those words could not refer to title by descent, as the children could not take their share until long after the death of the testator, and even then the legal title did not descend to the seven youngest, but to all his children, there being others, and, besides, the legal title was not to be divided, but the money to arise from its sale.

4. ASSIGNMENT *of contingent interests.* Contingent interests are not, ordinarily, assignable at law, and yet they may sometimes be assigned at law if coupled with some present interest. So, at law, such rights and interests may pass by way of estoppel, by lease and release, or, under the English system, by fine. But in equity, contingent interests and expectancies may be assigned, and may be the subject of a contract, such as a contract of sale, and, when made for a valuable consideration, will be enforced in a court of equity after the event has happened.

5. In such case, until the event has happened, the party contracting to buy has nothing but the contingency, which is a very different thing from the right to immediately recover and enjoy the property. He has not, strictly speaking, a *jus ad rem* any more than a *jus in re.* It is not a mere interest in the property, but a mere right under the contract. So, what purports to be an actual assignment in equity, amounts not to an assignment of a present interest, but only to a contract to assign when the interest becomes vested.

6. Therefore, a contingent legacy which is to vest on some future event, such as the legatees coming of age or surviving the period of distribution, may, in equity, become the subject of an assignment or a sale. So, even the naked possibility or expectancy of an heir to his ancestor's estate, may become the subject of a contract of sale or settlement; and, in such cases, if made *bona fide,* for a valuable consideration, it will be enforced in equity upon the happening of the event, or death of the ancestor, not as a trust attaching to the estate, but as a right of contract.

7. CONTRACT—*sale of contingent interest in a legacy.* A testator, after giving his wife a life interest in his home farm for her support, by his

will, provided that, at the death of his wife, and upon his youngest child coming of age, the same should be sold and the proceeds divided amongst his seven youngest children, and if any of them should die before the period of distribution, the portion of such should be equally divided among the survivors. Under the supposition that the interest had already vested in the seven children, one of them, by deed, conveyed his interest to the complainant for a valuable consideration, describing it as all right, title, interest, claim and demand, whether in possession or expectancy, of the grantor's part, "being one of seven heirs:"    *Held*, that the grantor had a contingent interest, depending upon his surviving the period of distribution, which was assignable in equity; but that, in order to give the deed effect, it must be treated as a mere equitable assignment, and, consequently, as not passing any greater interest than the assignor had at the time of the execution of the deed. It did not pass any interest subsequently acquired by the right of survivorship, but only the one-seventh part of the proceeds of the farm.

8. WILLS—*right of devisees to elect to treat devise of land to be converted into money, as realty.*  Where land is, by will, directed to be sold, and the proceeds divided among certain devisees, they have the right to elect to take the land itself; and it seems that, if they all unite in a conveyance of the land to a third party, this will be an exercise of their right to treat the interest devised as realty. But such a conversion of the property from personalty to real estate, or the contrary, can not be made by a part only of the beneficiaries. Therefore, if the conveyance of either of them is insufficient to pass real estate, the deeds of the others will not have such an effect.

9. PARTIES IN CHANCERY.  Where a will required land to be sold on the happening of a certain event, and the proceeds to be divided among the survivors of the testator's seven youngest children, and the complainants purchased the interests of all the children before the period of distribution, and where, subsequent to such purchase, and before the time fixed for distribution, two of the children died, it was *held*, on bill by the purchaser to have the land sold and the proceeds paid over to him, that each of the surviving children, and their husbands, where they were married women, were necessary parties, being interested in both the equitable and legal title.

10. ACKNOWLEDGMENT *of deed.*  Where the certificate of the acknowledgment of a deed, made by husband and wife, of an interest of the latter in real estate, fails to show that she was "personally known" to the officer taking the same, it will be wholly insufficient to pass her estate.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. JOHN A. McCLERNAND, Judge, presiding.

This was a bill in chancery, filed by Robert Underwood, Benjamin F. Burns and James McGee, against Alexander Ridgeway, Ballard Hudleston, James Hall, and Lucinda his wife, James Ridgeway, George Ridgeway, Albert Hudleston, Alexander Hudleston, Nancy Hudleston, Polly Ridgeway, Isaac Ridgeway, Samuel Ridgeway, Malinda Ridgeway, Dennis Proven, and Sarah J. Proven, his wife, to have certain land, named in the last will of Osborne Ridgeway, deceased, sold, and the proceeds divided. The facts of the case, upon which the points decided depend, are stated in the opinion of the court, except that the certificate of acknowledgment of the deed of Dennis Proven, and Sarah J., his wife, failed to show that the latter was personally known to the magistrate taking the same.    The court below decreed the sale of the land, and the payment of the entire proceeds to the complainants. Alexander and George Ridgeway alone prosecuted this writ of error to reverse the decree below.

Messrs. STUART, EDWARDS & BROWN, for the plaintiffs in error.

Messrs. HAY, GREENE & LITTLER, for the defendants in error.

· Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court :

Osborne Ridgeway died in 1841, leaving a will, the second clause of which contained the following provision :

"I give, devise and bequeath to my beloved wife, Jane Ridgeway, in lieu of her dower, living and support on and from the farm and plantation on which we now reside."

The third clause is as follows :

"*Third.*—I will, at the death of my wife, and on my youngest child coming of age, the farm on which I now reside, as aforesaid, be sold, and the proceeds divided amongst my seven youngest children, George Ridgeway, Alexander Ridgeway,

Enoch Ridgeway, Miranda Jane Ridgeway, Sarah Ridgeway, Malinda Ridgeway and Lucinda Ridgeway, their heirs and assigns forever, and if one or more of said seven children should die before inheriting his, her or their inheritance, to be divided equally amongst the remainder of the seven."

The original bill in this case was filed by Underwood, Burns and McGee, claiming to have purchased the interest of all the seven children above named, except that of Lucinda, before the death of the widow, and the court was asked to decree a sale of the premises and a distribution of the proceeds, giving to the complainants the shares thus purchased. The bill further set forth that Enoch and Miranda, from whom conveyances were claimed, had married, and died, leaving children, before the death of the widow. Subsequently, a supplemental bill was filed, setting up a purchase of the interest of Lucinda since the filing of the original bill. The complainants thus claimed the equitable interest in the entire property.

Alexander and George Ridgeway answered, denying the validity of the alleged assignments. The infant heirs of Enoch and Miranda answered by guardian *ad litem.* The other defendants were defaulted. The bill was finally dismissed by complainants as to Sarah, who had intermarried with one Dennis Proven, and a decree was rendered directing a sale of the premises, and a payment of all the proceeds to the complainants. Alexander and George Ridgeway bring the record to this court. The other defendants in the circuit court do not join in the writ of error, and are therefore not before this court.

It is urged, on behalf of the complainants, that the period of survivorship, under the third clause in the will, was the death of the testator, and that the interest of the devisees then vested and became assignable. It is further claimed that, even if the period of survivorship is to be referred to the date of the widow's death, and the attainment, by the youngest child, of her majority, the conveyances to the complainants,

made before that date were, nevertheless, good as equitable assignments. Both these positions are controverted by counsel for plaintiffs in error.

. The question as to the time when the testator intended the right of survivorship should apply, is certainly one of extreme doubt, and very good reasons may be given for adopting either conclusion. We have found it very difficult to arrive at any satisfactory decision, as it so often is, when a court is called upon to determine the actual intentions of a testator, manifested only in language susceptible of a double interpretation. · We have, however, in regard to this will, arrived finally at a different conclusion from that reached by the circuit court. We are of opinion that the date of survivorship must be referred to the period of distribution.

We are not informed by this record whether the will was made during the last illness of the testator. However that may be, it is undoubtedly true that most persons, in drawing a will without the aid of experienced professional advice, assume that the devisees, for whom they are making provision, will survive them, intending, in case of the death of any of such persons prior to their own, to provide for the new state of affairs by a new will or a codicil. Hence the reasonableness of the rule laid down by Jarman, as the result of the authorities, and expressed by him as follows : "In this state of the recent authorities, one scarcely need hesitate to affirm that the rule which reads a gift to survivors, simply as applying to objects living at the death of the testator, is confined · to those cases in which there is no other period to which such survivorship can he referred ; and that, where such gift is preceded by a life or other prior interest, it takes effect in favor of those who survive the period of distribution, and those only." 2 Jarman on Wills, 3d Amer. Ed. 462.

This rule, as one of general construction, applies specifically to the present case. Although the widow had not a technical life estate in the farm, she had the right to remain on it during her life, and receive from it her support. She had,

in the language of the foregoing extract, an "interest," and until its determination by her death, the land could not be sold.   It could not be sold even then, unless the youngest child had become of age, the object of the testator evidently being to preserve the farm as a home for his wife and children as long as they were likely to constitute a family.  Here was a "prior interest" which was to be extinguished by lapse of time before the land could be sold.   The land was then to be sold and the proceeds divided between certain of the children.  Here, then, applies, with literal exactness, the rule expressed by Jarman.   The will provides for survivorship.   It is indefinite in its terms, and the rule solves the doubt by applying the language of the testator to those who survive the period of distribution.

In the late case of *Mariott* v. *Abel,* 7 Law Reports, Equity Cases, 478, the Vice Chancellor uses the following language: "All these are cases of intention, and the rules adopted by the court have regard to the probable intention.   One sees that if there be a gift, either of real or personal estate, to one for life, or a limited period, and then a gift to a class, and the 'survivors or survivor' of that class, the word 'survivor' is uniformly referred to the period of distribution.   This was settled by *Cripps* v. *Wolcott,* 4 Madd. 11, with respect to personal estate, and now, by *Grayson's Trust Estate,* 2 D. J. & S. 428, overruling *Doe* v. *Prigg,* 8 B. & C. 231, as to real estate."

But rules of interpretation are only resorted to in regard to wills for the purpose of ascertaining the intention of the testator when ambiguously expressed.   It is the intention that finally controls, and we think the intention fairly inferrible from the language of this will, independently of all canons of interpretation, was, that the survivorship should relate to the period of distribution.

The testator directs that, on the happening of a certain event, his farm should be sold and the proceeds divided amongst his seven youngest children, and if one or more

"should die before inheriting his, her or their inheritance, to be divided equally amongst the remainder of the seven." It is said that the words "before inheriting," refer to the descent of the legal title, which was not devised by the will, and that it therefore refers to the date of the testator's death. But that can not be, because the words "inheriting" and "inheritance," in the same clause, unquestionably refer to the same thing, and are used in the same sense; and the inheritance to which the testator referred must have been the distributive share of the proceeds arising from the sale of the farm. True, it would not be an inheritance, in the technical sense of that word, but this will was not drawn with professional accuracy. There is no doubt that the so-called inheritance referred to the proceeds of the sale, as there was nothing else to which it could refer; and, indeed, the entire sentence admits of no other construction. The inheritance to be divided was the money arising from the land, and this division was to be made "amongst the remainder of the seven," if any of them should die before the arrival of the time. Referring to this fund thus to be raised, as the testator must have referred when he spoke of the death of any of the children "before inheriting" it, what period of time is it most reasonable to suppose he had in his mind when he used these words? The children would not inherit it at his death, for it was not to be brought into existence until long after that period. Even the legal title to the land did not descend to the seven youngest children, but to all the children, there being, in fact, several others. Besides, this legal title was not to be divided, but the money to arise from its sale. The money was the "inheritance," and the time of inheriting which the testator had in contemplation, referred, as we must suppose, to the time when the right to receive the money would accrue, which could only be after the death of the widow and the majority of the youngest child. The time of inheriting referred to a time when these persons would receive from the will an actual and

substantial benefit which the testator termed "inheritance," and not a mere contingent possibility.

It is urged that a construction which attributes to the testator an intention to deprive the children of a deceased child of any participation in his estate, is harsh and unnatural; but this argument has a double edge. If it was unnatural for the testator to make no provision for the offspring of such of his children as might die after his own decease, before the period of distribution, it was equally unnatural to do so in regard to the offspring of a son or daughter whose death might precede his own. Yet, one of these things he certainly did.

But, while we are of opinion that the right of survivorship, in this case, relates to the period of distribution, we are also of opinion that the assignments by these plaintiffs in error, Alexander and George Ridgeway, are binding upon them in a court of equity to the extent to which they professed to transfer their interest in the property or its proceeds. To what extent the like assignments, executed by the married women, are binding upon them, we do not decide, as they are not before us, and the question of their rights has not been argued.

It is urged by counsel for plaintiffs in error that, inasmuch as the will, upon familiar principles, is to be regarded not as a dévise of land, but as a bequest of money, and the right to receive the latter would depend upon survivorship, there is no certainty as to the person who is to take, and therefore there is no power to assign. In support of this position, counsel refer to a passage in 4 Kent, 261, which is as follows: "All contingent and executory interests are assignable in equity, and will be enforced, if made for a valuable consideration; and it is settled that all contingent estates of inheritance, as well as springing and executory uses and possibilities, coupled with an interest, where the person to take is certain, are transmissible by descent, and are devisable and assignable. If the person be not ascertained, they are not

then possibilities coupled with an interest, and they can not either be devised, or descend at the common law." It is evident that the learned author, in all of this passage, except the first clause, is referring to assignability at law.

Story thus states the rule in section 1040 of his Equity Jurisprudence: "Contingent interests are not ordinarily assignable at law, and yet they may sometimes be assigned at law if coupled with some present interest. So, at law, such rights and interests may pass by way of estoppel, by lease and release, or by fine. But the reach of this doctrine at law falls far short of that now entertained in equity." In section 1040c it is further said: "Contingent interests and expectancies may not only be assigned in equity, but they may also be the subject of a contract, such as a contract of sale, when made for a valuable consideration, which courts of equity, after the event has happened, will enforce. But until the event has happened, the party contracting to buy has nothing but the contingency, which is a very different thing from the right to immediately recover and enjoy the property. He has not, strictly speaking, a *jus ad rem* any more than a *jus in re.* It is not a mere interest in the property, but a mere right under the contract. Indeed, the same effect takes place if there be an actual assignment; for, in contemplation of equity, it amounts not to an assignment of a present interest, but only to a contract to assign when the interest becomes vested. Therefore a contingent legacy, which is to vest on some future event, such as the legatees coming of age, may become the subject of an assignment or a contract of sale. So, even the naked possibility or expectancy of an heir to his ancestor's estate may become the subject of a contract of sale or settlement; and, in such a case, if made *bona fide,* for a valuable consideration, it will be enforced in equity after the death of the ancestor; not, indeed, as a trust attaching to the estate, but as a right of contract." Story cites various cases in support of the text.

It is said by counsel for plaintiffs in error, that the persons who are to take under the will, are not certain. They are, however, certain, provided they survive the widow and the majority of the youngest child. The alleged uncertainty arises only from the uncertainty of life, and existed in the same degree in *Hobson* v. *Trevor*, 2 P. Williams, 191, *Beckley* v. *Newland*, ib. 182, and *Wethered* v. *Wethered*, 2 Sim. 183. In one of these cases the assignment was of a legacy, to vest on the legatee coming of age, and in another, of the expectancy of an heir. In such cases, if the assignor dies before the title vests, the assignee derives no benefit from his contract. If he survives, it would be most inequitable to permit him to retain a property right which he has fairly bargained to another, and a court of equity will not permit him to retain it.

The complainants, however, are only entitled to what they bought, and that, so far as relates to the plaintiffs in error, was one-seventh of the farm, or its proceeds, from each child. It is true, the deeds contain general words purporting to convey all right, title, interest, claim and demand, whether in possession or expectancy, to the grantor's part, "being one of seven heirs," in and to the land in question. But, in order to give the deed effect, it must be treated as a mere equitable assignment, and, of course, should not be construed by the court as passing a larger interest than the parties, at the time, intended. The deed of George Ridgeway was made by him as "one of seven heirs," and by Alexander as "one of the seven youngest children." The parties, no doubt, supposed the interest had already vested in the seven children. George Ridgeway, who also claimed the interest of Miranda, conveyed to McGee, and Alexander Ridgeway to Burns. McGee subsequently made a conveyance to Burns, by which he professed to transfer two-sevenths of a portion of the farm. It is evident, from the face of these deeds, that the complainants considered themselves as purchasing from each devisee the

one-seventh supposed to be vested, and not any interest to be derived from survivorship. Indeed, the transaction is so stated by complainants in their pleadings. It follows, that the portion of the fund which would have gone to Enoch and Miranda, had they lived, was not affected by these deeds. The plaintiffs in error, if they had never conveyed, would have been entitled each to one-fifth of the property, and they are now entitled each to the difference between one-fifth and one-seventh.

It is urged by counsel for plaintiffs in error that, as all the seven children had made conveyances of their interests, they had thus elected to hold the property as land rather than money, and the title to the property, as land, had thus passed to the complainants. That such a right of election, as to the character in which the property shall be taken, exists, in cases of this sort, is true, but, as was held by this court in *Baker* v. *Copenbarger*, 15 Ill. 103, and *Jennings* v. *Smith*, 29 ib. 114, such a conversion of the property from personal to real estate, or the contrary, can not be made by a part only of the beneficiaries; all must act. In this case, the proof of a conveyance by Miranda was verbal, and was wholly insufficient, and the deed offered in evidence from Sarah Proven was not so acknowledged as to pass the real estate of a married woman.

The case of *Baker* v. *Copenbarger*, above cited, is also relied upon by counsel for the purpose of showing that the interest of the devisees was not assignable either in law or equity. That case, however, only decides that such an interest is not subject to levy and sale under execution. In this we fully concur, as it is in the nature of a *chose* in action.

For the reason above given, we leave, as an open question, the effect of the deeds of the married women. We reverse the decree because the plaintiffs in error are entitled to participate in the fund to the extent above indicated. Neither should the bill be dismissed as to Sarah Proven and her

husband. They are necessary parties, being interested in both the equitable and legal title.

The case is remanded for further proceedings, in conformity with this opinion.

*Decree reversed.*