SAMUEL B. DURYEA

*v.*

HERMANUS B. DURYEA *et ux.*

1. WILL—*of the estate devised.* Where a testator devised to his son three-fourths of his real property, derived from a certain source, and the remaining fourth to his daughter during her natural life, and unto her children upon her death, and immediately upon the testator's death the property was to vest in the children of his daughter, then living, and such as should thereafter be born, subject to the mother's life estate; and further provided, in the will, that if either of the children of the testator should die before him, leaving issue surviving, the share devised to such parent should go to his or

her children, in equal proportions; and, also, that if either of the testator's children departed this life leaving no issue, the share of the one so dying should go to the survivor, his or her heirs and assigns, forever; and the daughter died before the testator, and the son, after the decease of the testator, also died, leaving no issue,—it was *held*, that the son, having survived the testator, took an absolute estate in the lands devised to him, not subject to being defeated upon his death without issue.

2. SAME—*construction of words.* Words employed in one part of a will must be understood in the same sense when used elsewhere in the same instrument, unless something in the context makes a different meaning imperative.

3. SAME—*meaning of word " survivor."* The word " survivor " in a will, when unexplained by the context, will be construed in its natural sense, but if, when interpreted according to its literal sense, the tendency is to defeat the actual intention of the testator, courts will readily listen to arguments, drawn from the context, for reading the word " survivor " as synonymous with the word " other."

4. Where property has been devised to a son and daughter in certain proportions, and it is provided that if either devisee shall die leaving no issue, his or her share shall vest in the survivor, and his or her heirs, forever, if the daughter dies before the testator, and the son afterwards dies leaving no issue, the heir of the daughter can not be regarded as the survivor within the meaning of the will, and as thus taking by way of an executory devise.

5. SAME—*construed.* Where a testator, by his will, devised to his son all his lands in this State, which he had owned with his deceased brother, and which his brother had devised to him, and afterwards devised to his son three-fourths of the lands devised under his brother's will, and the other fourth to his daughter, it appearing that the testator's brother had devised to him his interest in the Illinois lands, and also lands in the State of New York, in which the testator had no previous interest, it was *held*, that the testator's son took the whole title to the lands in this State, and the daughter no interest therein, and that the subsequent clause giving the son three-fourths and the daughter one-fourth interest in the lands of the testator derived from his brother, related only to the lands in New York.

6. SAME—*marriage—revocation.* The marriage of a testator after the making of a will is, by operation of law, a revocation of his will, even though there is no issue born to him.

APPEAL from the Circuit Court of Adams county; the Hon. JOSEPH SIBLEY, Judge, presiding.

Messrs. WHEAT, EWING & HAMILTON, for the appellant.

Messrs. Skinner & Marsh, and Mr. Wm. McFadden, for the appellees.

Mr. Justice Scott delivered the opinion of the Court:

The lands sought to be partitioned in this proceeding, prior to 1845 were owned jointly by Rodman Bowne and Samuel Bowne, both then residents of the State of New York. Under the will of Rodman Bowne, who died in 1845, Samuel Bowne became the sole owner in fee, by devise, of these lands in Illinois, as well as valuable real property situated in New York, in which he had not previously had any interest. Samuel Bowne died in 1853, having made and published his last will and testament, which was duly admitted to probate in Kings county, in New York, where he had resided in his lifetime. By the sixth clause of his will, Samuel Bowne devised a large amount of property which he had owned, other than that acquired under the will of his brother, Rodman, unto his son, Gilbert W. Bowne, and then specifically devised all of his Illinois lands, which he had owned with his deceased brother, unto this same son, Gilbert W. Bowne, and also " three-fourth parts of all the real estate devised " unto him by his brother, Rodman, of which he might die seized, unto him and his heirs and assigns, forever.

After making numerous devises of valuable property to his daughter, Elizabeth Ann Duryea, the testator, Samuel Bowne, by the seventh clause of his will, then devised unto his daughter, Elizabeth Ann Duryea, " one-fourth part of all the real estate devised unto him by his brother, of which he might die seized," unto her during her natural life, and unto her children after her death; and immediately upon the testator's death the property devised was to vest in the children of his daughter, then living and such as should thereafter be born, subject to the life estate of their mother.

In the twelfth clause it is provided, should either of the children of the testator named die before him, leaving issue him or her surviving, the share devised to such parent should go to his or her children, in equal proportions. It was further

provided in this twelfth clause, should either of the testator's children depart this life leaving no issue him or her surviving, the share of the one so dying should go to and belong unto the survivor, his or her heirs and assigns, forever.

Elizabeth Ann Duryea, one of the devisees named in the will of Samuel Bowne, predeceased the testator, leaving her surviving two children, Cornelius Rodman Duryea, since deceased, and Samuel B. Duryea, one of defendants.

On the 18th day of March, 1853, Gilbert W. Bowne, being then unmarried, made his will, by which he disposed of all his property, both real and personal. Among other bequests and devises, he devised the Illinois lands involved in this litigation to trustees, for the use and benefit of his nephews, Cornelius Rodman Duryea and Samuel B. Duryea, and his niece, Elizabeth R. Bowne, named as a defendant in this proceeding as Elizabeth R. B. King. Cornelius Rodman Bowne, mentioned in the will, died in August, 1853, before the testator, leaving his father, Hermanus B. Duryea, and Samuel B. Duryea, his brother, as his only heirs at law, but no change was made in the will on that account. By one clause of his will, Gilbert W. Bowne bequeathed unto Mary Peters the sum of $10,000. After making his will, in June, 1853, Gilbert W. Bowne intermarried with Mary Peters, and thereafter they lived together as husband and wife until the death of Gilbert W. Bowne, which took place in November, 1853. His will was admitted to probate in the county where he resided, in New York, and has not since been set aside or revoked, or for any cause annulled.

It appears, from a stipulation in the record, that Gilbert W. Bowne was the owner, in his lifetime, of real property of the value of over $800,000, in which his widow, under the laws of New York, was entitled to, and was endowed of, one-third part for her dower as at common law, and that her right of dower was in no manner affected by accepting a legacy, which she did, under the will of her husband. In 1867, the trustees, under the will of Gilbert W. Bowne, in whom was the legal title, deeded the lands in Illinois to Samuel B. Dur-

yea and Elizabeth R. Bowne, in accordance with the provisions of the will. It is also admitted, by stipulation, that Elizabeth R. Bowne, Cornelius Rodman Duryea and Samuel B. Duryea were grand-children of Samuel Bowne, and niece and nephews of Gilbert W. Bowne, the two latter being children of Hermanus B. Duryea and Elizabeth Ann Duryea. It is further admitted, Gilbert W. Bowne died, leaving no children or descendants of any child. Before this suit was brought, Hermanus B. Duryea, late the husband of Elizabeth Ann Duryea, deceased, intermarried with Mary Peters Bowne, widow of Gilbert W. Bowne, and is joined with her as complainant.

On the final hearing, the court decreed a partition of the lands, one-half to Mary Peters Bowne Duryea, in fee simple, and dower in the remaining half, and to Samuel B. Duryea and Elizabeth R. B. King, each one-fourth in fee simple, subject to the dower of complainant.

Only Samuel B. Duryea complains of the decree, and it is upon his appeal the cause is be heard in this court.

Three questions were made upon the argument of this case:

*First*—Did Gilbert W. Bowne, under the will of Samuel Bowne, take a fee simple estate in the lands situated in Illinois, or did the fee simple title to the lands described, under the twelfth clause of the will of Samuel Bowne, on the death of Gilbert W. Bowne, vest in Samuel B. Duryea, the surviving child of Elizabeth Ann Duryea?

*Second*—Should it be held Gilbert W. Bowne, under the will of Samuel Bowne, took a fee simple estate in any portion of the lands in Illinois, the next inquiry is, what portion— whether the whole estate or seven-eighths only?

*Third*—Under the facts shown, did the marriage of Gilbert W. Bowne with Mary Peters, subsequent to making his will, there being no issue born of such marriage, by operation of law revoke the will previously made?

It will be observed, on reference to the twelfth clause of the will of Samuel Bowne, it is provided, should either of his children depart this life before him, leaving issue him or her surviving, the share or portion of the estate devised and be-

queathed to the parent should go to and vest in such issue in like manner as it would in the parent, if living. Elizabeth Ann Duryea died before the testator, leaving issue surviving her, who, under that clause of the will, took the share or portion of the testator's estate devised to her. That clause further provided, should either of the children of the testator depart this life leaving no issue him or her surviving, the share of the one so dying should go to and vest in the survivor, his or her heirs and assigns, forever.

Concerning the construction of this provision of the will the principal arguments have been made. The position assumed by defendant, as we understand it, is, that on the death of Gilbert W. Bowne, leaving no issue, the estate that had vested in him under the will of Samuel Bowne became divested, and passed as an executory devise and became vested in Samuel B. Duryea, the only surviving child of Elizabeth Ann Duryea, who had predeceased her father and her brother, and in that way he became seized in fee simple of the title to the lands in litigation. Reading this whole paragraph of the will of Samuel Bowne together, we do not think it will bear that construction. This clause, as well as the preceding one, it seems to us, must be understood to be explained by the word "before," as therein used. When that is done, much of the difficulty experienced in getting at the exact meaning of the testator is removed. That must have been the understanding of the testator himself. His daughter died several years before he did, and yet no alteration or change in that respect was made in the will, but it was permitted to stand, that the property might be distributed as provided in the sixth and seventh clauses of the will, in case of the death of either of the principal devisees during the lifetime of the testator. Divesting this subject of the metaphysical distinctions of the common law concerning the construction of wills, and construing the whole paragraph together according to the canons of construction, a way is prepared that leads to the conclusion the testator was providing for the distribution of his property in case of the death of either one of the subjects of his bounty

before his own demise.   That, and nothing more, is plainly what he intended to do.

It will not be necessary to consider the definition given in the books of what is meant by the words, "dying without issue," or, "departing this life leaving no issue him or her surviving," or other similar phrases—whether they mean issue living at the death of the devisee, or an indefinite failure of issue —as they have no particular bearing on the decision in this case. It must be conceded, we think, the words, "should either of my said children above named depart this life leaving no issue him or her surviving, the share of the one so dying is to go to and belong to the survivor of them, his or her heirs and assigns, forever," can not be construed as a limitation over, by way of an executory devise to the heirs of such devisee as shall predecease, according to any definition given of an executory devise, unless the word "survivor," as used, has the meaning of the word "other," and was used by the testator in that sense.   There is no contention the word "survivor," in the first sentence of the twelfth division of the will, is to be understood in its literal sense of survivorship, and should the construction insisted upon be adopted, it would involve the testator in the absurdity of using it in the very next sentence in the sense of "other," which has always been regarded as an "unnatural" meaning, and one certainly not understood, except by persons familiar with the subtle learn- ing to be found in the books on this branch of the law.   Un- less for the strongest reasons, we ought not to adopt a construction that would involve the use of the same word in such widely different and even contradictory senses in the same paragraph.   Words employed in one part of a will must be understood in the same sense when used elsewhere in the same instrument, unless something in the context makes a different meaning imperative.

Text writers lay it down, the word "survivor," when unex- plained by the context, must be construed in its natural sense; but when, interpreted according to its literal import, the ten- dency would be to defeat the actual intention of the testator,

courts will readily listen to arguments drawn from the context, for reading the word "survivor" as synonymous with "other." Jarman on Wills, page 442; 2 Redf. on Wills, page 372, § 2.

There is nothing in the context, as we read it, that induces the belief the testator used the word "survivor" in the sense of "other;" but the impression is made it was employed in its ordinary sense, as commonly understood. As we have seen, it was used in the sense of survivorship in the next preceding sentence. On reference to other clauses of the will we find Gilbert W. Bowne is ordered and directed to invest at interest, out of his share of the real and personal estates devised and bequeathed to him, the sum of $30,000 bequeathed to a niece of the testator, and it is made a charge and lien upon the real property devised unto him. Should it be held the devises to Gilbert W. Bowne were executory devises, in the technical common law sense, it would suspend the right of alienation; and how could he invest, *out* of *his share*, the very large bequest to the niece of the testator, unless he had the power to sell and convey the lands devised to him? Giving the construction contended for would involve the will in inexplicable contradictions and absurdities, which ought, if possible, to be avoided.

Applying that clause of the will which provides for survivorship to the period of distribution, as the authorities seem to hold is the correct rule, when that occurred there was no survivor to Gilbert W. Bowne, because of the predecease of the other devisee. The happening of that contingency was provided for by the devises and bequests to the children of the one dying before the testator, or which is the same thing in this case, the period of distribution. *Ridgeway* v. *Underwood*, 67 Ill. 419; *Davidson* v. *Dallas*, 14 Ves. 575. As was said by the Chancellor, in *Davidson* v. *Dallas*, "there is nothing in this will indicating a general intention upon which the forced construction of the term survivor has been adopted." We prefer to understand the testator in this case as having used the word "survivor" in its ordinary sense, as he had done in

the preceding sentence. Indeed, the authorities seem to hold there is no rule fairly deducible from the cases on this subject, that will justify the reading of "survivor" as equivalent to "other," except it is to be done whenever, from the context or other provisions of the will, it is rendered certain such must have been the intention of the testator. 2 Redf. on Wills, p. 374, § 10.

Under this view of the law, Gilbert W. Bowne took an absolute fee simple title to the real property devised to him by Samuel Bowne, which, upon his death, would have descended to his heirs, had it not been disposed of by will.

There is some contradiction in the sixth and seventh clauses of the will of Samuel Bowne, as to the disposition he intended to make of the real property which had come to him under the will of his brother, Rodman Bowne. It will be seen by the sixth clause, the testator specifically devised the lands in Illinois to Gilbert W. Bowne, and also three-fourth parts of all the real estate devised to him by his brother, Rodman Bowne, which undoubtedly had reference to the real property situated in New York, in which he had previously had no interest. In the seventh clause the testator, after enumerating other large gifts, also devised to Elizabeth Ann Duryea one third part of all the real estate devised to him by his brother, Rodman Bowne, which, we gather from the context, clearly means the other one-fourth of the real property situated in New York, and not devised to Gilbert W. Bowne. In the agreement of the 12th of April, 1867, made by the parties in interest with a view to settle all disagreements that had arisen in regard to their respective interests in the estates of Samuel Bowne and Gilbert W. Bowne, as to the property in New York, that interpretation seems to have been adopted, and we are of opinion it is the only fair construction that can be given to the will. The testator had already devised all the lands situated in Illinois, one-half of which he had derived under the will of his brother, and it only remained to dispose of the other real estate derived from the same source, situated in New York, which he did by devising three fourth parts to his

4—85TH ILL.

Syllabus.

son and the other one-fourth part to his daughter during her natural life, and then to her children and their heirs and assigns forever.

The other point made, viz: Under the facts as shown, did the marriage of Gilbert W. Bowne with Mary Peters subsequent to making his will, there being no issue born of such marriage, by operation of law revoke the will previously made, is definitely disposed of by the case of *Tyler* v. *Tyler*, 19 Ill. 151. It has been urged upon us in this case, as it was in *American Board of Foreign Missions* v. *Nelson*, 72 Ill. 564, to review our former decision on this subject, which we then and now decline to do, regarding it as the settled law of this State. For a fuller expression of our views as to the reasons for declining to reconsider the propriety of that decision, reference is made to the opinion in the latter case cited. Under the previous decisions of this court the subsequent marriage of the testator must be regarded as a revocation, by operation of law, of his will previously made.

No error appearing in the record, the decree will be affirmed.

*Decree affirmed.*