## H. LOUIS NICOLL

*v.*

## JOHN J. SCOTT *et al.*

*Filed at Mt. Vernon, June 21, 1881.*

| 99 | 529 |
| 158 | 148 |
| 99 | 529 |
| 166 | 81 |
| 99 | 529 |
| 171 | 232 |
| 99 | 529 |
| 77a | 386 |
| 99 | 529 |
| 178 | 55 |
| 99 | 529 |
| 182 | 93 |

1. ADMINISTRATOR WITH WILL ANNEXED—*has no power to sell land under power in will.* An administrator with the will annexed has no power, without the aid of a court, to sell lands devised to an executor to be sold, or directed to be sold by the executor. Such administrator can not execute a power of sale of land given the executor in the will.

2. The statute authorizing the appointment of an administrator *de bonis non* on the death of the sole or surviving executor, etc., if there "is anything remaining to be performed in the execution of the will," does not authorize such administrator to execute a power of sale in the will. The words, "anything remaining to be performed in the execution of the will," mean only something to be performed as executor, and belonging to the office proper of executor, and do not extend to anything to be done as agent or trustee, under a power to sell land.

3. DEVISE—*of remainder, whether vested or contingent.* Where a testator, after devising his lands to his wife for her life, devised the same lands to his children and some grandchildren, by name, to be equally divided between them at the decease of his widow, and then declared it his will that the farm and improvements be sold after the death of his wife, "so that the proceeds" should "be equally divided among the survivors named in the will," and that his son W. J. receive $100 out of his son J.'s share, for money advanced to J.: *Held,* that the children and grandchildren took a vested estate in remainder, to take effect on the termination of the life estate of the widow, and that the word "survivors," in such case referred to the testator's death, and not to the time of the death of his widow.

4. Words of survivorship will not be referred to the period of distribution, where there is an antecedent gift to devisees named, the enjoyment of which may be regarded as postponed. It makes a difference where all there is of the gift is in the direction to pay or distribute.

5. The mere fact that one estate under a will is provided to take effect after the termination of an intervening one, will not have the effect to prevent both estates becoming vested at the moment of the decease of the testator, the one in possession, and the other in prospect or remainder.

6. ESTATE—*whether vested or contingent.* The question whether an estate vests, or remains contingent, depends upon whether the condition of the intervening estate determining, and the estate over taking effect, is one that must

happen some time, or may never happen. If the former, then the estate in remainder will be a vested estate.

7. LIMITATION—*does not run against tenant in common before an ouster.* The Statute of Limitations will not run in favor of one tenant in common against the others, until an ouster of them, which must be shown.

APPEAL from the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

The bill in chancery in this case, filed November 12, 1880, shows that on June 18, 1880, Nicoll, the complainant, purchased of the defendants, John J. Scott and Mary Scott, certain real estate in the bill described, for the sum of $14,700, $500 of which was paid in cash, and the promissory note of Nicoll given for $9900, payable November 1, 1880, without interest till maturity, and that the defendants gave to Nicoll their bond, conditioned that upon payment of the note at maturity they would execute to him a good and sufficient warranty deed, conveying to him the land free and clear of all incumbrances, except a mortgage to one Adam Karr, for $4300; that under the bond the complainant took possession of the land and made improvements; that complainant is ready and willing to pay said $9900 upon receipt of a good and sufficient warranty deed; that the defendants are not the owners in fee of the whole of the land, but that there is an outstanding title to $\frac{15}{56}$ of the land, by reason whereof defendants are unable to execute a good and sufficient deed; and the bill prays that the defendants be compelled to surrender the note and to execute a deed for the premises upon such just and equitable terms as to the court may seem proper, and for an injunction against the negotiation of the note.

The defendants answered, setting up a perfect title in John J. Scott, derived from his father, Alexander Scott, through the will of the latter, and certain conveyances named, and asking for a specific performance of the contract.

It appears that on January 2, 1855, Alexander Scott died testate, seized of the real estate in question, and in his will

described and devised. He left surviving him Sarah Scott, his widow, and Hannah Rittenhouse, Sarah Huber, Jacob Scott, William J. Scott, John J. Scott, Isabel Fincher and Mary Dunn, his then living sons and daughters, and the heirs of the bodies of Melinda Woods, a daughter, and Elizabeth Quick, a stepdaughter of said Alexander Scott, both of whom died some years before the making of his will.

The last will and testament of Alexander Scott, dated September 11, 1854, and probated February, 1855, contains the following devises and bequests, upon which the questions in this case arise, to-wit:

" *Third*—It is my will, and I do hereby devise and bequeath to my beloved wife, Sarah Scott, the farm and improvements thereon, on which I now live, known as 100 acres, more or less, being a part of survey 381, claim No. 286; also 100 acres, more or less, being a part of the south fractional half of section thirty-five (35), in township one (1) north of range eight (8) west, during her natural life to take the issues and profits thereof.

' " *Fourth*—I give, devise and bequeath to my children, Hannah Rittenhouse, Sarah Huber, Jacob Scott, William J. Scott, John J. Scott and Isabel Fincher, and my grandchild, Eleonora Alice Fincher, my farm and lands on which I now live, to be equally divided among them at the decease of my wife, Sarah. And it is my will the said farm and improvements thereon be sold after the decease of my wife, Sarah, so that the proceeds shall be equally divided among the survivors named in said will; and it is further my will, that my son William J. Scott receive $100 out of my son Jacob Scott's share, for money advanced to my son Jacob."

The above described is the land in question.

Jacob Scott, one of the devisees named, on April 18, 1855, conveyed his interest in the lands described in the will to John Fincher, husband of the Isabel Fincher named in the will as a devisee. Sarah Scott, the widow of the testator,

died May 21, 1872. Prior to that time the said Eleonora Alice Fincher, Jacob Scott, John Fincher and Isabel Fincher had died, in the order of time as their names are here mentioned, and left heirs other than the devisees named in the will.

Sarah Scott, the widow of the testator, was the executrix of the will, and the estate of the testator had been settled finally by her June 14, 1857, as far as she had power under the will. In the year 1877, the said John J. Scott, one of the devisees in the will, and who was the administrator of his mother's estate, was, by the county court of St. Clair county, Illinois, appointed administrator *de bonis non*, with the will annexed, of the estate of said Alexander Scott, deceased, and as such, August 20, 1877, after giving public notice in a newspaper, and by posting, sold the lands pursuant to the notice to the highest bidder, and Sarah Huber became the purchaser, and he conveyed the lands to her, and she, on the day following, conveyed to said John J. Scott an undivided one-half, and to said Hannah Rittenhouse an undivided one-fourth of the lands. This sale by the administrator was not made under the statute, by order of court, nor by direction or decree of any court, but the sale was approved by the county court, and also the distribution of the proceeds of the sale among Sarah Huber, Hannah Rittenhouse, John J. Scott and William J. Scott. Afterwards, John J. Scott acquired, by conveyance, all the interest of Sarah Huber, Hannah Rittenhouse and William J. Scott in the lands.

The circuit court found that John J. Scott had good title to all the land, and decreed payment by Nicoll of the note, and that upon the payment, defendants should convey to Nicoll. Nicoll appealed.

Messrs. HAY & KNISPEL, for the appellant:

There is an outstanding title to an undivided interest in the lands in controversy, and appellant files his bill to adjust the equities of the parties to the bond for a deed in conformity

with the decisions of this court. *Morgan* v. *Smith,* 11 Ill. 194; *Bishop* v. *Newton,* 20 id. 175; *Harding* v. *Paschall,* 56 id. 219. Taking possession by the purchaser is not a waiver of objection to title. *Page* v. *Greely,* 75 Ill. 400.

Assuming that the devise was not one of land, but of money, appellees have no legal title to convey, unless Scott, as administrator *de bonis non,* had the right to execute the power of sale. *Baker* v. *Copenbarger,* 15 Ill. 103.

An administrator with the will annexed can not make a sale of land directed by a will to be sold by an executor. *Hall* v. *Irwin,* 2 Gilm. 176; 3 Redfield on Wills, 137, 138; 1 William's Exr. 724, note; *Rankin* v. *Rankin,* 36 Ill. 293.

This rule is not changed by statute. Rev. Stat. 1874, ch. 3, sec. 37. The duty of an administrator under this section is to administer the estate not already administered.

The devise here, we think, is one of real estate. The gift of the land to the devisees precedes the direction, and is, in fact, independent of it. *Hurt* v. *McCartney,* 18 Ill. 129; *Gill* v. *Grand Tower Manf. Co.* 92 id. 249.

The will having created a life estate, with a remainder over to the devisees named in the will, the remainder vested in the devisees at once upon the death of the testator, and the death of a remainder-man before the *cestui que vie* can not cause a lapse. The estate goes to his heirs or representatives. 4 Kent's Com. 202 *et seq;* *Collier Will case,* 40 Mo. 287; *Ruffin* v. *Farmer,* 72 Ill. 615; *Illinois Land Co.* v. *Bonner,* 75 id. 315; Story's Eq. vol. 1, sec. 604, (ed. 1877); 2 Redfield on Wills, 266, 267; 2 Jarman on Wills, (Rand. & Tal. ed.) 406 *et seq.*

It is not necessary that a legatee or devisee in remainder should survive a life tenant, since both vest at the decease of the testator. (2 Redfield on Wills, 176).

The mere fact that one estate under a will is provided to take effect after the termination of an intervening one, will not have the effect to prevent both estates becoming vested at the moment of the decease of the testator, the one in pos-

session, the other in prospect or remainder. 2 Redfield on Wills, 215.

The question of vesting, or remaining contingent, depends upon whether the condition of the intervening estate determining, and the estate ever taking effect, is one that must happen some time or may never happen. 2 Redfield on Wills, 218.

In the case at bar the remainder takes effect upon the death of Sarah Scott,—an event that must happen. The remainder is therefore not a contingent one, but vested in the devisees named in the will, and upon the death of either of them passed to his heirs, and upon a conveyance by one, to his grantee. A remainder is never held to be contingent, when, consistently with the intention, it can be held to be vested, and an estate once vested will not be divested unless the intent to divest clearly appears. *Doe ex dem.* v. *Considine*, 6 Wall. 458; *Croxall* v. *Shererd*, 5 Wall. 268; *Duryea* v. *Duryea*, 85 Ill. 41; Jarman on Wills, (Rand. & Talc. ed.) 442, 445.

We maintain that there is no special intent to so limit the estate manifested in the second clause of the fourth paragraph of the will, the more so as the preceding clause, " I give and bequeath to my children (naming them) and my grandchild, Eleonora, etc., my farm and lands on which I now live, to be equally divided among them at the decease of my wife Sarah," contains no word of survivorship. The intention of the testator can further be ascertained by reference to the last clause of the fourth paragraph, " and it is further my will that my son William J. Scott receive $100 out of my son Jacob Scott's share, for money advanced to my son Jacob." If the death of Jacob prior to the death of the life tenant was to divest his share or interest, and cast it upon his co-devisees, then it had ceased to exist at the time of distribution, and the last quoted clause of the will could have no force. If his share had no existence, how could William receive $100 out of Jacob's share? *Duryea* v.

*Duryea*, 85 Ill. 41. The language above quoted clearly charged the $100 directly upon Jacob's share, and not on Jacob personally. *Markillie* v. *Ragland*, 77 Ill. 98; *Funk* v. *Eggleston*, 92 id. 515. And we can not, for a moment, this being the last expression, assume, without some clear expression to that effect, that the testator intended to destroy that charge. *Stevenson* v. *Leslie*, 72 N. Y. 512.

Survivorship is referred to the death of the testator, if there be no special intent manifest to the contrary, so as not to cut off the heirs of the remainder-man who should happen to die before the tenant for life. They are vested, and not contingent, remainders. *Doe ex dem. Meinz* v. *Prigg*, 8 Barn. & Cress. 231; *King* v. *King*, Watts & Serg. 205; *Moore* v. *Lyons*, 25 Wend. 119; *Weed* v. *Aldrich*, 5 Thomp. & C. (N. Y.) 105; Passmore's Appeal, 23 Pa. St. 381.

Where A devises to B for life, and on the death of B to his surviving children, all who survive the testator are intended, and on his death take a vested interest in the estate. *Martin* v. *Kirby*, 11 Gratt. 67; *Drayton* v. *Drayton*, 1 Desau. 324; *Anderson* v. *Smoot*, Spear Ch. 312; *Vickers* v. *Stone*, 4 Ga. 461; *Stempson* v. *Batterman*, 5 Cush. 153; *Harris* v. *Berry*, 7 Bush, 113; 2 Redf. on Wills, 266, 378.

Mr. THOMAS QUICK, for the appellees:

That the right of survivorship shall be referred to the period of distribution, and not the testator's death, counsel cited *Rankin* v. *Rankin*, 36 Ill. 293; *Ridgeway* v. *Underwood*, 67 id. 419.

Where land is directed to be sold and the proceeds divided between certain devisees, they will have the right to take the land itself. But such a conversion of property from personalty to realty, or the contrary, can not be made by a part only of the beneficiaries. *Ridgeway* v. *Underwood*, 67 Ill. 419; *Baker* v. *Copenbarger*, 15 id. 103.

Section 37 of the statute relating to the administration of estates, authorizes an administrator to perform any act

in execution of the will and left unperformed by the executor.

Jacob Scott never had any vested interest. A remainder is an estate, which is so limited as to be immediately expectant on the natural determination of a particular estate of freehold, limited by the same instrument. 2 Jarman on Wills, 483; 2 Kent's Com. 352, 354; 4 id. 284, note; *Welch* v. *Belleville Savings Bank,* 94 Ill. 204.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

It is claimed that title to the land is in John J. Scott, under the deed made by him as administrator *de bonis non,* with the will annexed, of Alexander Scott, deceased, to Sarah Huber. If, as such administrator, he had the power to make sale and conveyance of the land, the claim is sustained. But this court decided, in *Hall* v. *Irwin et al.* 2 Gilm. 176, that such an administrator with the will annexed had no power, without the aid of a court, to sell lands devised to an executor to be sold, or directed to be sold by an executor. In avoidance of the force of this decision, appellees' counsel urges that there has since been a change in the statute relative to the power of an administrator with the will annexed, which should cause a contrary decision under the present statute. The present statute reads: "When a sole or surviving executor or administrator dies, without having fully administered the estate, if there is personal property not administered, or are debts due from the estate, *or is anything remaining to be performed in the execution of the will,* the county court shall grant letters of administration with the will annexed, or otherwise, as the case may require, to some suitable person, to administer the estate of the deceased not already administered." Rev. Stat. 1874, p. 111, sec. 37.

The change from the previous statute which is thus relied upon, is in the addition of the words above which are italicised. We perceive nothing in such alteration of the statute which calls for any difference of decision from the former.

There was no case here, under the statute, for the appointment of such an administrator. No executor or executrix had died "without having fully administered the estate." There was no occasion for a "person to administer the estate of the deceased not already administered." The estate of the testator had been settled finally by the executrix twenty years before, so far as she had power under the will.

The ground of the decision in *Hall* v. *Irwin et al.* was, that executors may act in a double capacity : as executors, by virtue of their office, and as agents or trustees under a warrant of attorney,—in which latter capacity, as in the case of a power given to sell land, if they act, the trust imposed upon them is of a special and confidential character, and can not be delegated, and that it is only the powers and duties of the executor, as such, resulting from the nature of his office, which devolve upon an administrator with the will annexed, and not an authority as trustee,—a power to sell land,— which is a personal trust or confidence reposed in the executor by the testator.

We think the above decision applies equally under the statute as it now stands, as it did before ; that the words in the present statute, " anything remaining to be performed in the execution of the will," mean only something to be performed as executor, and belonging to the office proper of executor, and do not extend to anything to be done as agent or trustee, under a power given to sell land ; and that the sale and conveyance by the administrator with the will annexed were invalid, and no title was derived thereunder.

But the more difficult and important question in the case arises upon the construction of the will of Alexander Scott. The defendants maintain, and so the circuit court held, that the estate in remainder passed, under the will, to such only of the devisees named in it who survived the death of the life tenant, Sarah Scott. Under this construction defendants have title to all the land.

Complainant contends that the will created a life estate in Sarah Scott, with a remainder over in fee to the devisees named in the will, which vested in the devisees at once upon the death of the testator. Upon this construction there is an outstanding title, not in the defendants, to $\frac{15}{56}$ of the land.

Looking solely to the words in the last clause of the 4th paragraph of the will, "and it is my will the said farm, and improvements thereon, be sold after the decease of my wife, Sarah, so that the proceeds shall be equally divided among the survivors named in said will," there is ground for defendants' construction, under the cases of *Ridgeway* v. *Underwood*, 67 Ill. 419, and *Blatchford et al.* v. *Newberry et al. ante*, 11, and the rule that where the form of the gift is, after the expiration of a prior interest, to distribute a fund to "survivors," the word "survivors" refers to the period of distribution. But here, in the immediately next preceding clause, there is a direct and absolute gift of the lands to the devisees by name, to be equally divided among them at the decease of the testator's wife,—that is, to be equally held and enjoyed by them then.

It makes a difference in construing survivorship, as referring to the time of distribution or not, whether all that there is of the gift is in the *direction to pay or distribute*, or whether there is an antecedent gift to devisees named, the enjoyment of which may be considered as postponed, survivorship being more readily referred to the period of division in the former case than in the latter. See case last cited.

After the giving, here, of the lands absolutely to the devisees named in the will, to be equally divided among them at the wife's decease, there follows, then, in the next clause, an expression of the will of the testator, that the lands so before given be sold after the wife's decease, "so that the proceeds shall be equally divided among the survivors named in said will." This would seem to imply supposition on the part of the testator that there was necessity for the sale and division of the proceeds, in order to the making of equal division. But

as the lands themselves might be equally held and enjoyed without selling them and dividing the proceeds, it would seem that the provision for selling, " so that the proceeds shall be equally divided," should be subordinated to the antecedent gift of the lands themselves to the devisees named in the will. This provision, in connection with the preceding clause, may, perhaps not improperly, be regarded as amounting but to a recommendation to convert the land into money and divide the proceeds, as held in the somewhat similar case of *Hurt* v. *McCartney*, 18 Ill. 132.

The cases of *Baker* v. *Copenbarger*, 15 Ill. 103, and *Ridgeway* v. *Underwood, supra,* recognize the doctrine that where there is a devise made of money to be produced by the sale of lands, by the election of all the devisees they may take the land itself instead of the money. In *Gill* v. *Grand Tower Manufacturing Co.* 92 Ill. 249, it was held, that a direction in a will that a sale should be made of property, there being no trust created, but a mere naked power given to sell, and nothing done thereunder, would not prevent the property from descending as intestate estate. A further provision bearing upon intention is the last clause in the fourth paragraph, as follows: "And it is further my will that my son William J. Scott receive $100 out of my son Jacob Scott's share, for money advanced to my son Jacob."

This is all absolute and unqualified that William J. should have this $100, and that he should have it out of Jacob's share, indicating that Jacob's share was an absolute and certain one. But if the devise was only to those surviving the wife's decease or the period of the distribution of the money from the sale of the land, then Jacob would not have had any share absolutely and certainly, but it would have depended upon the contingency of such survival whether he had any share at all; and as he did die before the widow, he did not, according to defendants' construction that only her survivors took, have any share, though this provision of the will certainly contemplated that he was to have a share

out of which William J. should be paid $100. It is the intention which is to be regarded and which is to control; and to ascertain this, no single provision is to be construed by itself, but in connection with the other portions of the will. Construing, then, these several provisions of the fourth paragraph, which have been remarked upon, together, we must come to the conclusion that the devise here of the lands was a life estate to the widow, with a remainder in fee to the other devisees named in the will, and that it was a remainder which vested in the devisees at once upon the death of the testator. Whatever of force is to be given to the word "survivors," used, it must be referable, we think, to the time of the testator's death, in view of the intent to that effect manifested by the two other provisions of the will which have been commented upon. The mere fact that one estate under a will is provided to take effect after the termination of an intervening one, will not have the effect to prevent both estates becoming vested at the moment of the decease of the testator,—the one in possession, the other in prospect or remainder. The question of vesting or remaining contingent depends upon whether the condition of the intervening estate determining, and the estate over taking effect, is one that must happen sometime, or may never happen. If the former, then the second estate in remainder will always be regarded as vested. 2 Redfield on Wills, 215, 217. The remainder here was to take effect upon the death of Sarah Scott,—an event that must have happened. It was, therefore, not a contingent one, but vested in the devisees named in the will, and upon the death of either of them passed to their respective heirs, and upon a conveyance by any one, to his grantee.

The stipulation in the case, that Hannah Rittenhouse, Sarah Huber, William J. Scott and John J. Scott, who are the only devisees named in the will who survived the life tenant, have had the exclusive and peaceable possession of the land, claiming and exercising acts of ownership since the death

of the life tenant, May 21, 1872, that they have paid the taxes thereon regularly every year up to 1880, and that no other person has claimed the premises adversely, does not show a title by limitation. It does not show an ouster of the other tenants in common.

There being a want of title to $\frac{15}{56}$ of the land, we think the proper decree would have been a rescission of the contract of sale, the refunding of what has been paid, decreeing properly with respect to rents and profits and any improvements made, unless complainant should elect to accept a warranty deed upon payment of the note given.

The decree of the circuit court is reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*

Mr. JUSTICE SCOTT took no part in the consideration of this case.