LIZZIE CROSSON ET AL. V. T. B. DWYER ET AL.

No. 527.

</div>

1. **Jurisdiction—Action to Construe Will.**—The District Court has jurisdiction of a suit brought to obtain a construction of a will, irrespective of the existence of a trust, and wherein there is no prayer for any other relief.

2. **Same—Venue.**—Such action not being a money demand against the estate, may be brought where the defendants reside, although administration under the will may be in another county.

3. **Will—Construction—"Our Children."**—A testator who had adult children by a former marriage and minor children by a second marriage, devised his property to his second wife in trust for "our minor children" during minority, after which it was to be divided among "our children." *Held*, that the children by the first marriage took equally with the others in the division.

4. **Same—Community Property.**—A testator who devises community property will be presumed, in the absence of a clear intention to the contrary, to refer only to his own interest in the property, and not to the entire property.

5. **Same—Charge of Court.**—A charge, that if the jury find that the will "admits of two equally probable constructions," etc., does not assume that there are or may be two equally probable constructions, and does not shift the burden of proof.

6. **Evidence—Impressions of Witness.**—Impressions of a witness formed from what he heard the testator say, and from a general acquaintance with him, are not admissible to explain the intention of testator's will.

7. **Same—Deposition—Answer Not Responsive.**—For interrogatory and an answer of the witness thereto held in part to be not responsive and properly excluded, see the opinion.

8. **Suit to Construe Will—Judgment.**—In an action brought to obtain a construction of a will, it was adjudged, inter alia, that the property of the testator was

community property; but the evidence failing to clearly show that a certain material item of the property was not his separate property, and the judgment on this point being adverse to the interest of minors who were parties, it is affirmed in all respects save as to that item of property, and the cause remanded, with instructions to the District Court to try that question alone.

APPEAL from Bexar. Tried below before Hon. W. W. KING.

*John A.* and *N. O. Green* and *Thomas H. Franklin*, for appellants.

1. The District Court of Bexar County had no jurisdiction over Lizzie Crosson as independent executrix. Rev. Stats., art. 1198, clause 6; Todd v. Willis, 66 Texas, 704; Bondies v. Buford, 58 Texas, 266; Heath v. Layne, 62 Texas, 691; Rev. Stats., arts. 1938–1940, 1944–1947; Prather v. McClelland, 76 Texas, 584; Lambkin v. Smith, 62 Texas, 251.

2. The statute having provided a special remedy by which persons interested in an estate may have their rights therein determined, and by which an independent executor who is administering an estate under a will can be brought to account for waste, mismanagement, or misappropriation of the property of the estate, and the same statute having prescribed the method of procedure, that method alone can be pursued. Titus v. Latimer, 5 Texas, 436; Bondies v. Buford, 59 Texas, 269; Wharf Co. v. Railway, 72 Texas, 455; Duck v. Peeler, 74 Texas, 271.

3. The plaintiffs in their petition ask no specific relief against the executrix of an equitable nature, and unless such relief is asked the court will not entertain a bill simply to construe or interpret the provisions of a will. 3 Pom. Eq. Jur., sec. 1156, p. 122; Id., sec. 1157, p. 124.

4. The will, construed in the light of the admission of the plaintiffs in their petition, shows that the plaintiffs are not devisees thereunder, and have no interest in the estate of George Crosson. The children were of different families. Carroll v. Carroll, 20 Texas, 731; Beach on Wills, secs. 310, 333; Smith v. Smith, 1 Edw. (N. Y.) Ch., 189, 191; McMurray v. Stanley, 69 Texas, 231.

5. From the circumstances in evidence, it is conclusively shown that the beneficiaries under the will were his wife Lizzie Crosson and his minor children by her, which he called in his will "our minor children" and "our children." Hunt v. White, 24 Texas, 652; Peet v. Railway, 70 Texas, 527; Beach on Wills, secs. 348, 350, 355–357.

6. The evidence of the witness Haley as to the impressions made on his mind by the remarks of the testator was relevant and admissible. Beach on Wills, secs. 356, 357; Linney v. Wood, 66 Texas, 27; Rogers v. Wheeler, 22 Wend., 148; Daugherty v. Rogers, L. R. A., books 3, p. 847; Burnet v. Burnet, 30 N. J. Eq., 598; Johnson v. Brown, 51 Texas, 80.

*Buckler & Martin*, for appellees.—1. One of the principal reasons why suits to establish money demands against an estate should all be brought in the county in which the estate is being administered, is the fact that otherwise there might be numerous suits in different parts of

the State pending against an executor or an administrator at the same time, and he could not be present at more than one place. Hence the wisdom of the provision of the statute which requires them all to be brought in the county in which the estate is being administered. But this reason will not apply to a suit to construe a will, as only one such could be pending at a time.

2.   Courts of equity will entertain a suit to construe a will by any one interested therein, and any one claiming as a devisee has the same right to bring a suit to have a will construed as the executor has, and this jurisdiction does not depend upon the trust relation of the executor or of any one else to the property involved.  It is not necessary that plaintiffs should ask any further relief, either legal or equitable, than the mere construction of the will.  This is sufficient to give the court jurisdiction of the case, whether there is any other relief asked for or not.   Hawes v. Foote, 64 Texas, 34; Purvis v. Sherrod, 12 Texas, 140; Rogers v. Cennard, 54 Texas, 42; Crain v. Crain, 17 Texas, 80; Little v. Birdwell, 21 Texas, 606; Howze v. Howze, 14 Texas, 232; Smith v. Smith, 11 Texas, 102; Parker v. Parker, 10 Texas, 83; Groesbeck v. Groesbeck, 78 Texas, 668; 71 Mo., 333; 56 N. Y., 407; Bowers v. Smith, 10 Paige, 193.

3.   The plaintiffs were entitled to have the will construed, notwithstanding the executrix may not have been maladministering the estate, and notwithstanding the will gave her the right to sell and dispose of the property for the support of herself and the support and education of the minor children, and notwithstanding the fact that the will required that the property was to be kept together until the youngest child became of age.   Crain v. Crain, 17 Texas, 87; Heilman v. Heilman (Ind.), 28 N. E. Rep., 310; Horton v. Cantwell, 15 N. F., 553; Sellers' Exr. v. Reed, 13 S. E. Rep., 745; Wintermute v. Heinly (Iowa), 47 N. W. Rep., 66.

4.   Both from the provisions of the will itself and from the evidence in the case, it is apparent, that by the use of the words "our children" in the will, the testator meant to include all his children.   McMurray v. Stanley, 69 Texas, 227; Wigram on Wills, 142; 1 Greenl. on Ev., sec. 287, note 1; Id., sec. 288; 2 Story Eq. Jur., sec. 1065.

The court did not assume in the charge given that the will admitted of two equally probable constructions, but stated it hypothetically and correctly.   The charge was not on the weight of the evidence, but presented correctly the law of the case.   The language was not misleading.   Wills v. Hudson, 72 Texas, 605; Mitchell v. Mitchell, 80 Texas, 112; Jacobs v. Totty, 76 Texas, 347.

FLY, ASSOCIATE JUSTICE.—Appellees, Thomas B. Dwyer, his wife Katie Dwyer, C. L. Nevill, and his wife S. E. Nevill, who were plaintiffs in the court below, instituted this suit in the District Court of Bexar County for the purpose of obtaining a construction of the will of George Crosson, Sr., under the provisions of which they

claimed an interest in the estate left by him. It was also claimed by them, that a portion of the property left by George Crosson, Sr., was his separate estate. Mrs. Lizzie Crosson, one of the appellants, in her answer, claimed that all the property was the community estate of herself and her deceased husband George Crosson, Sr.; that she owned in her own right one-half of the whole estate, and that one-half of the said George Crosson's one-half community interest had been devised to her by the will. The remaining one-fourth she claimed under the will for her minor children. The testimony shows, that Kate Dwyer and S. E. Nevill were the daughters of George Crosson, Sr., and his first wife, who died when one of her children was between three and four years old, and the other six months old. George Crosson, Sr., married Mrs. Lizzie Crosson, his second wife, in 1866, and by her he had six children, to wit, John, George, Mamie, Thomas, Lizzie, and Charles, all except the first two being minors when this suit was instituted. All of them were minors when the father died, in 1885. George Crosson, Sr., left a will, which was duly probated. The will was as follows:

"In the name of God, Amen: I, George Crosson, of the County of Presidio, in the State of Texas, but at present residing in the city of San Antonio, county of Bexar, in said State of Texas, being of sound and disposing mind and memory, but knowing the uncertainty of human life, do declare the following to be my last will and testament, revoking all former wills, testaments, or codicils made by me:

"Item 1. I give and bequeath to my dear wife, Lizzie Crosson, all my property, real and personal and mixed, situated in the county of Presidio and State of Texas, or elsewhere, to be held and controlled absolutely by her as her own, for the purpose of support to herself and the support and education of our minor children. This absolute control to continue until our youngest child shall attain his or her majority.

"Item 2. After our youngest living child shall have attained his or her majority, I desire that a partition of all my estate shall be made, one-half to go to my wife, Lizzie Crosson, and vest absolutely in her, or in the event of her death, as she may determine. The remaining one-half to go share and share alike to our children or their next of kin.

"Item 3. I desire that my wife shall act as my executrix of this my last will and testament, and that she shall not be required to give bond and security of any kind as my executrix, and that no action shall be taken by the probate or other court upon this my last will and testament, beyond the probate and recording the same, and the filing of an inventory of my estate.

"Item 4. I desire and authorize my executrix, Lizzie Crosson, and give her full power at any time she may think proper to sell and alienate all or any portion of my estate, converting the same into money or other property, to be held and enjoyed by her as stated in Item 1.

"Item 5. Relying upon and trusting to the good judgment of my executrix and her desire to protect the interests of our children, I declare it to be my intention and wish that she shall not be responsible for the management of my estate, nor required to render any account of receipts or expenditures during the management of the same.

"Item 6. I desire and hereby appoint my executrix, Lizzie Crosson, the sole guardian of the estate and persons of our minor children until they shall obtain their majority.

"In testimony whereof, I hereunto sign my name in the city of San Antonio, Texas, this 2nd day of November, 1885, in the presence of Thomas J. Devine and W. S. Smith, who witness the same at my request, in my presence.          [Signed]     "GEORGE CROSSON."

The evidence tends to show that all of the property was community estate, but the evidence is not so clear on that subject as it might be. If the $5000 obtained for the place in San Antonio was the separate property of George Crosson, the sheep bought with the money would be his separate estate, and while it might be inferred that the original sheep are all dead, the testimony does not show it.

Mrs. Crosson resided in Bexar County, and the District Court therein was not precluded from jurisdiction of the case by section 6, article 1198, Revised Statutes, which provides, that "where the suit is against an executor, administrator, or guardian, as such, to establish a money demand against the estate which he represents, in which case the suit must be brought in the county in which such estate is administered." This section, inserted by the codifiers, is quite different from article 1423, Paschal's Digest, which was broad enough to cover every class of case against the persons named. The old section is as follows: "In cases of executors, administrators, or guardians of an estate, or trustees, who must be sued in the county in which the estate is administered." It is clear that the codifiers intended to limit the exception embodied in section 6 to one class of cases, namely, "money demands." We are of the opinion that independent executors are included within the operation of either law, but the law now in force does not hold within its purview cases like the one we are now considering. It will fall under the operation of the general law, that no person who is an inhabitant of this State shall be sued out of the county in which he has his domicile. The petition in this case, while alleging mismanagement and waste of the estate, prays for nothing but a construction of the will, and is in fact a suit brought for no other purpose than to obtain a construction of the will, and a determination of plaintiff's relation to it. It has been held in a number of States, that the special equitable jurisdiction to construe wills is simply an incident of the general jurisdiction over trusts, and that a court of equity will not entertain jurisdiction of a suit brought for no other purpose than to obtain a construction of a will without a prayer for any other relief.

The trust relation, either express or implied, is held by this line of cases essential to jurisdiction. 3 Pom. Eq. Jur., sec. 156.

In Texas, however, a broader and more comprehensive view is taken of the matter of jurisdiction, and the existence of a trust, expressed or implied, is not made the test of jurisdiction. Parker v. Parker, 10 Texas, 83; Smith v. Smith, 11 Texas, 102; Purvis v. Sherrod, 12 Texas, 140; Howze v. Howze, 14 Texas, 232; Little v. Birdwell, 21 Texas, 598; Becton v. Alexander, 27 Texas, 659; Hawes v. Foote, 64 Texas, 22; Groesbeck v. Groesbeck, 78 Texas, 668. In the case we are considering, it is alleged that plaintiffs are entitled to a share in the estate, that the executrix denied their right, and was with the proceeds of the estate buying other property, taking the title in her own name, and they pray for a construction of the will, and that their status be fixed in relation thereto. The terms of the will show the existence of a trust, and whether we take the position taken by some of the States, that the existence of a trust must be shown to obtain jurisdiction, or the Texas view, which is sustained by the supreme judicial tribunals of a number of States, that the existence of a trust is not essential to give courts jurisdiction to construe a will, the District Court of Bexar County had jurisdiction of the case. The question of whether, in conjunction with the construction of the will, the court had power to take action upon any mismanagement or waste of the estate, or whether that jurisdiction is conferred upon the County Court alone by articles 1944 to 1947, Revised Statutes, need not be passed upon in this case, for the reason, that there is no prayer for affirmative relief against such waste or mismanagement, and the question was not submitted to the jury.

The chief end to be attained in arriving at a just and equitable construction of a will is to ascertain the intention of the testator as expressed in the words of the will. All rules of construction should bend to this, the prime object of the investigation. With this object in view, evidence would be admissible of the circumstances and environments with which the testator was surrounded at time of making the will. Parol testimony thus becomes admissible to show the situation of the testator in his relations to persons and things about him, just as it would be permissible in arriving at the interpretation of any other ambiguous written instrument. Indeed, the rules in connection with wills, governing the admission of extraneous evidence, are, under later authority, identical with those applicable to any written instrument. Thus, in the case we are considering, evidence throwing light upon who was intended by the expression "our children," used in the will, would be admissible. In order to arrive at the intention of the author of the will, it became necessary to ascertain who were the persons comprehended under the term "our children," and if this was left in doubt by the terms of the will itself, parol testimony became not only permissible but necessary. It was shown by

parol testimony that the testator, George Crosson, had eight children —two by the first and six by the last wife. When the second marriage took place the children by the former marriage were very young, and were reared by the second wife. The kindest and most cordial relations at all times existed between the father and stepmother and the older children. There is nothing to indicate a desire to disinherit the offspring of the first marriage, unless the language of the will itself does so. The laws of Texas, in the absence of a will making a different disposition of the property, made the children of George Crosson by his first wife heirs to an equal portion with the children of the last marriage in his half of the community estate, and in order to divert the property from its natural and legal course, there should be "either an express devise or necessary implication, such implication importing not natural necessity, but so strong a probability, that an intention to the contrary can not be supposed." 2 Jarm. on Wills, 741; Beach on Wills, sec. 334; In re Hoch's Estate (Pa.), 26 Atl. Rep., 610.

It will be noted, that it was shown by parol testimony that when the will was executed all the children by the second marriage were minors, and some light is thrown upon the intention of the testator in using the term, "our children," by a distinction that seems to be drawn in the will between "our children" and "our minor children." If all the children were minors, there would have been no purpose subserved in drawing a distinction between the minors and another class. It may be argued, however, that the term "minor children" is used for the purpose of restricting the maintenance and support provided for in the will to the children of the second marriage; but this construction can not obtain, for in the sixth item it is provided that Mrs. Crosson should be sole guardian "of the estate and persons of *our minor children* until they shall obtain their majority." The testator evidently had in mind that there were children who reached the majority, as well as minors, who would take under the will.

A will employing the same words, the testator having two sets of children, was in 1893 construed by one of the Orphans' Courts of Pennsylvania, and it was held, that "our children" meant the children of both marriages. The court said: "Who were the intended beneficiaries under the will was at first blush regarded as a difficult question; but further reflection has led the court to the conclusion, that the children of testator by his first wife as well as those by his third should be classed amongst them. It must be assumed, in the absence of a clear provision to the contrary, that Mr. Wampler intended to treat his children alike. Doubt in construction must be resolved in favor of equality amongst all." In re Wampler's Estate, Pittsburg L. Jour., July 5, 1893. This opinion, while not coming from a superior court, is founded upon reason and proper rule of construction, and as such is quite persuasive.

The evidence tends to show that all the estate was the community property of Mrs. Crosson and her husband, and he had no power to provide for any but the disposition of his own property, and it is the proper rule to hold, in the absence of a clear intention in the opposite direction, that there was no intention to attempt to interfere with the portion of the community estate belonging to his spouse. "If susceptible of such construction, the language of a testator ought to be held to refer to his own interest in the community property, rather than to the entire property owned in common by husband and wife." Smith v. Butler, 85 Texas, 126. Under the application of this rule, if the property was community, when a partition of the estate takes place, Mrs. Crosson in addition to her community interest is entitled to one-half of her husband's interest. The points raised in connection with the question of the property being the community estate can have no practical bearing on the decision of the case, so far as appellant Mrs. Lizzie Crosson is concerned, as the judgment of the courts adjudged the property to be community property, and it becomes useless for her to insist that certain charges should have been given presenting that question to the jury. Mrs. Crosson obtained in the judgment all for which she asked, and is in no position to complain about the manner in which that conclusion was reached. The minors, however, are in a position to complain. The issue should have been presented as to them. That portion of the charge which instructs the jury that "if, in considering the language of the will by the light of surrounding circumstances admitted in evidence, you find the will admits of two equally probable constructions, that one should be adopted which admits plaintiffs as legatees, rather than one which disinherits them," is not open to the objection, that it is assumed that there is or may be two equally probable constructions to be given to the language of the will, and does not shift the burden of proof.

The impressions that may have been produced upon the witness Haley, from what he may have heard the testator say and from his general acquaintance with him, were properly excluded by the court. In response to the cross-interrogatory, "Is it not true that the common children of George and Lizzie Crosson were all minors at the time of his death? by common children, is meant his children;" appellants' witness Haley answered, "Yes; by common children to both, I understand to mean the children of his last marriage, to wit, John, George, Mamie, Tom, Lizzie, and Charley. George Crosson always called Sallie and Katie 'my children,' and the other children by his wife, 'our children.' I have heard him speak of them in that way. He said Mrs. Crosson was as good to them as their own mother." All after the first sentence in this answer was properly stricken out, as not responsive to the interrogatory, upon written objections made by appellees. The verdict was as follows: "We the jury find verdict for the plaintiffs." Only one issue was presented to the jury, as to whether the term "our children" meant all the children, or those only of the

last marriage.   Upon this verdict the court rendered a judgment that the property was community estate, that the will had reference alone to the testator's half of the estate, that Mrs. Crosson was entitled, in addition to her one-half of the estate, to one-half of her husband's estate, and that the balance belonged in equal shares to the children of both marriages.  The judgment is not responsive to the verdict.  There is nothing in the pleadings or the charge upon which to predicate the judgment that the whole of the property was community estate.  In the petition, it is alleged that a portion of the property was the separate estate of George Crosson, and in the answer there is nothing setting up the interest to which Mrs. Crosson is entitled.  The court must have consulted the evidence in rendering the judgment; but this is not permissible.  Brient v. Bruce, 24 S. W. Rep., 35.  Had the charge instructed the jury that it had been proven that the property was community, and that Mrs. Crosson was entitled to one-half of her husband's community interest, and the only issue for them to determine was, whether the whole of the children or only those of the last marriage were entitled to the remaining portion of the property, this, together with the verdict, would form a basis for the judgment.  It is true that Mrs. Crosson has received all she is entitled to under the will, and the appellees are not complaining, but there are minor children whose interests are affected, and the judgment should not stand.

The judgment is reversed and the cause remanded.

Delivered January 23, 1895.

### ON MOTION FOR REHEARING.

FLY, ASSOCIATE JUSTICE.—It was in effect held in our original opinion in this case that the construction placed by the District Court upon the will of George Crosson, Sr., was correct, and that there was no error in adjudging that Mrs. Lizzie Crosson was entitled to one-half of the community property and one-half of her deceased husband's estate, and that the balance belonged in equal shares to the children of both marriages.  The only ground for reversal was, that the judgment declaring that all the property was community was not responsive to the verdict.

It is therefore our opinion, that the former judgment of this court reversing the judgment of the District Court should be set aside, and that the judgment of the District Court, in so far as it declared Mrs. Lizzie Crosson entitled to one-half of the community estate and one-half of the estate of George Crosson, Sr., and that the remainder of the community estate be equally divided among all the children of both marriages, should be affirmed, and that judgment be here rendered declaring all the property community estate with the exception of any that may remain from the proceeds of the $5000 realized from

the sale of the separate property of George Crosson, Sr., and that this cause be remanded to the District Court to try that question alone.

*Reversed and remanded.*

Delivered March 6, 1894.

JAMES, Chief Justice, did not sit in this case.

Writ of error refused.