WILLIAM M. BAILEY and JOHN CARTER BROWN, Trustees, *vs.* ELENA BROWN *et al.*

| | |
|---|---|
| 19 | 669 |
| 22 | 150 |
| 19 | 669 |
| 23 | 68 |
| 19 | 669 |
| 25 | 248 |
| 19 | 669 |
| 26 | 401 |

A. by her will and codicil devised and bequeathed one moiety of certain real and personal estate for the benefit of her two sons, equally, and their issue, with cross remainders over to the survivor of the sons in case either of them should die without issue living ; and also devised and bequeathed the other moiety of said estate to her two daughters, equally, with like provisions relative to issue and survivorship ; remainder over to the other of these classes in case of failure in either one of any person to take ; and, upon failure in both classes of any one to take, then to her own right heirs.

After these provisions the will and codicil further provided—"If either of my said sons should die without leaving any child *who shall survive me . . . . . .* then . . . . as to the . . . . share of him so dying, in trust for the other of my said sons," &c.

Testatrix had two sons, one living at the time of filing the bill, but childless ; and one who was not married until sixteen years after her death, to whom a child was born after his decease. The other son, one of the daughters, and this grandchild (about two months old at time of filing the bill) were the only descendants of the testatrix living at the beginning of the suit.

*Held*, that it was clear from the will, as a whole, that the grandchildren of the testatrix were intended to be made the objects of her bounty.

*Held*, that the complainants were authorized to pay over for the benefit of the infant grandchild the income of the trust estate from which his father received the income during his life.

*Held*, also, that the complainants should apply in like manner the income from

that part of certain real estate of which his father had the income in his life-time, and should convey said part of said real estate to said grandchild when the latter attains the age of twenty-one years.

It is a cardinal rule of construction that the testator's intention must control if it be not inconsistent with some established rule of law.

Particular expressions in a will must yield to the general intent.

A testator is presumed to have used the words in which he expresses himself with their ordinary meaning, unless the context of the will shows that he used them in a different sense; in the latter case the words will be construed to have the meaning intended.

The words "survive" and "survivor" in wills will be taken in their literal and ordinary import unless there be something in the context or attending circum-stance which shows that they were used in a different sense. The primary meaning of the word "survive" is *to outlive;* it may have the secondary mean-ing *to live after.*

It is not a word or phrase in a will, but the manifest intent of the testator, which is sacred and ought to prevail.

BILL IN EQUITY by trustees for construction of parts of a will, and for instructions.

, *January* 4, 1897.    TILLINGHAST, J.    This is a bill brought by the trustees under the will of Caroline M. Brown, late of Warwick, deceased, for instructions relating to the execu-tion of certain of the trusts contained in said will.    As the will in question is printed in full in the case of *Bailey, Peti-tioner,* 13 R. I. 543, there is no occasion for repeating it here.

The bill is brought against Elena Brown, executrix of the last will and testament of her late husband, Grenville R. Brown, who was a son of said Caroline M. Brown, Grenville Paul Nicholas Brown, the infant son of said Grenville R. Brown and said Elena Brown, Rush C. Hawkins and Ann Mary B. Hawkins his wife, and said John Carter Brown in his individual capacity.

It sets out certain portions of the will of said Caroline M. Brown, and then shows that after the execution thereof Caroline M. Brown, daughter of the testatrix, intermarried with Paul Bajnotti, and has of late deceased without issue living at her decease; that Nicholas Brown, grandson of said testatrix, attained the age of twenty-one years, and thereafterwards deceased without issue living at his decease; that the said Grenville R. Brown intermarried with the said Elena Brown, and thereafterwards, to wit, on the seventh

day of February, 1896, deceased, and that since his decease a son, the infant respondent in this case, has been born ; that said John Carter Brown and the said Ann Mary B. Hawkins and the said infant son of Grenville R. Brown are the only descendants now living of the testatrix Caroline M. Brown ; that certain questions have arisen concerning the proper construction of a portion of said will and the codicil, which forms a part thereof, that is to say :

Whether the complainants are authorized to pay over or apply the income, or any part thereof, arising from the share in said trust estate from which said Grenville R. Brown derived income during his lifetime, for the benefit of said infant son of Grenville R. Brown.

Whether the complainants are authorized, when the said infant son shall arrive at the age of twenty-one years, to transfer and pay over to him the capital of the said share ; and if the said infant son shall decease under the age of twenty-one years, without issue, to whom shall the income of said share be paid, and when, and to whom shall the principal of said share be transferred and paid, and at what time. Also, whether the said John Carter Brown, (inasmuch as there was no child of the said Grenville R. Brown in the lifetime of said testatrix), has not become entitled to the income of said share in the trust estate from which said Grenville R. Brown derived income during his life time, as aforesaid ; and, if so, when and to whom should the capital of said share be distributed and conveyed, and to whom shall said income be paid on the decease of said John Carter Brown.

Whether the complainants shall pay or apply the rent of the undivided ninth part of the Whitman Block, in said will and codicil mentioned, for the benefit of said infant son of said Grenville R. Brown, and whether they shall convey the said ninth part of said block to said infant son upon his attaining the age of twenty-one years ; and in case he shall decease before attaining that age, without issue or with issue, to whom shall the income of said share be paid, and when and to whom shall the principal of said share be conveyed, and whether said John Carter Brown is entitled to

the said rent of said share during his life time, and if so
when and to whom shall the same be paid after the decease
of the said John Carter Brown, and to whom shall the prin-
cipal of said share be paid and when?

The answer of the guardian ad litem of said Grenville Paul
Nicholas Brown, submits the rights of the said infant to the
protection and decree of this court, and for the information
of the court in the premises sets up that the said Caroline M.
Brown, the testatrix aforesaid, was at the time of the date
of the making of the will the widow of the Hon. Nicholas
Brown, late of said Warwick, deceased, and that the bulk, if
not all, of the property disposed of in and by said will was
either ancestral property of her husband, which he had in-
herited from his father, and which had come to her from her
husband under the statute as his widow, he having deceased
intestate, or else was property which she had purchased after
his death with the proceeds of such ancestral property; that
she was born on the　　　day of　　, 1807, and that she died
on the 9th day of July, A. D. 1879; that at the time of the
making of said will she had living four children therein
named, to wit, John Carter Brown, the complainant afore-
said, who was born on, to wit, the 16th day of March, 1840,
and was married on to wit, the 15th day of April, 1869, to
his wife who is now living, but that he has never had any
children; also a daughter, the respondent Ann Maria B.
Hawkins, who was born on, to wit, the 9th day of March,
1837, and married on, to wit, the 30th day of June, 1860, to
the respondent Rush C. Hawkins, and who has never had
any children; also a daughter, Caroline M. Brown, who was
born on, to wit, the 28th day of October, 1841, and married
on, to wit, the 17th day of June, 1876, to Paul H. Bajnotti,
and who deceased on the　　　day of　　, 189 , and who
never had any children; also a son, Grenville R. Brown, who
was born on, to wit, the 17th day of June, 1846, and married
on, to wit, the 17th day of June, 1895, to Elena Brown afore-
said, and who died on the 7th day of February, 1896, leaving
only one child him surviving, viz., the respondent said Gren-
ville Paul Nicholas Brown. That the testatrix had also an-

other child, a son, Alfred Nicholas Brown, who had deceased prior to the date of the making of said will, and who left surviving him only one child, a grandson, Nicholas Brown, mentioned in said will, who was born on, to wit, the      day of September, 1862, and who died on, to wit, the      day of November, 1891, unmarried and without issue. That owing to certain family differences, arising prior to and at the time of the marriage of her said son, Alfred Nicholas Brown, the testatrix had little or no intercourse after the decease of her said son with his widow or with his child, her said grandson Nicholas Brown, and little sympathy with him. That the amount of the legacy bequeathed to him, in and by said will and codicil, was very much less in amount than the share of his deceased father in her estate would have been if the same had been equally divided. That the said will and codicil were both drawn by the complainant, William M. Bailey, a gentleman experienced in business, but not learned in the law, who was the confidential adviser in business matters of testatrix. That the testatrix refused to have any lawyer have anything to do with the drawing of her will; that in drawing said will and codicil, under the general instructions of the testatrix, the said Bailey, as to the verbiage and formal expression thereof, used such other wills as he had access to at the time, as had been drawn for or used by the parties, and as had been prepared by counsel learned in the law, in whom he had confidence. That the estate, both real and personal, which was to pass and did pass under the said will and codicil, was large in amount, and of a value aggregating several hundred thousand dollars.

The respondent John Carter Brown answers by admitting the statements and allegations contained in the bill, and leaves his rights and interests in the case to the protection of the court.

The will in question, including the codicil thereto, is very lengthy, exceedingly verbose and, if strictly construed in all its parts, is manifestly inconsistent. It therefore becomes necessary to carefully study the same, in the light of the facts and circumstances set out in the answer to the bill,

43

with the view of ascertaining the scheme which the testatrix had in mind and desired to accomplish, it being a cardinal rule of construction that the testator's intention must control, if not inconsistent with some established rule of law. *Watson, trustee,* v. *Woods,* 3 R. I. 226, (230) ; *Rogers* v. *Rogers,* 11 R. I. 38, (72) ; *Aldrich* v. *Aldrich,* 12 R. I. 141, (143) ; *Boardman, Pet'r,* 16 R. I. 131, (145) ; *Wales* v. *Bowdish,* (Vt.) 4 L. R. A. 819.

It appears that at the time of the making of the will the testatrix had two daughters living, Mrs. Hawkins, who was married, and Miss Caroline M. Brown, who was unmarried, and also two sons, Mr. John Carter Brown and Mr. Grenville R. Brown, both of whom were unmarried ; that at the time of making the codicil Mr. John Carter Brown was married, but neither Mrs. Hawkins nor he had any children, nor has either of them since then had any children ; that Miss Caroline M. Brown remained unmarried until after the date of the codicil, when she married Mr. Bajnotti, in the life time of her mother, whom she survived, and that she never had any children ; that Mr. Grenville R. Brown was not married until long after his mother's decease, and died leaving only the infant respondent in this case, a posthumous son. The grandson, Nicholas Brown, at the time of the making of the will was about seven years of age. He survived the testatrix, and attoined the age of twenty-one years, but never married.

Such being the facts existing at the time of the making of the will and codicil, we come now to the consideration of the general scheme thereof. In the original will, after disposing of certain personal effects and providing for suitable memorials to her deceased husband, and her son Alfred, the testatrix goes on to make provision for her grandson Nicholas in case he should attain the age of twenty-one years, and for his children, if any he should have, if he should die under the age of twenty-one. The testatrix then proceeds to divide her estate in halves, and gives one-half part thereof outright to her two sons equally, while the other half is given in trust to be held in equal shares for her two daughters, the income to be paid to them during their lives, and after their death

to any children or other issue that might live to take the
share of their deceased parent ; and in case either daughter
should die without issue, the survivor was to take the share
of income of her deceased sister during her life, and the same
after her death to her children if any she leaves ; and in case
both daughters should decease without issue, then the re-
mainder over to the two sons and their respective issue, or
the survivor of them and his issue, in the same way.

The codicil, which was made five years later, after making
some minor changes in the will, and after disposing of cer-
tain pieces of property, to wit, the one-ninth part of the
Whitman Block estate, the Phillipsburg property, the house
on Brown street, etc., by specific bequests to her several
children, goes on to revoke so much of the will as gave a re-
mainder over from the daughters to the sons and their issue,
and so much of the will as gave one-half of the estate to the
sons outright and free from any trust, and bequeaths the
one-half part of the estate to trustees for her sons, with
similar provisions to those of the will with reference to the
daughters' portion, gives cross-remainders over between the
sons and their issue, as she had formerly done for the daugh-
ters, and upon the failure of both sons and their issue a re-
mainder over to the daughters, and a further bequest to her
own right heirs upon the failure of all the objects of the sev-
eral trusts created by the will and codicil.   In short, as well
stated by the learned counsel for the infant respondent, in
his brief, "the will and codicil present an elaborate scheme
and definite purpose of the testatrix, after making a definite
bequest to her grandson, to tie up, for as long a period as the
law would allow her to do, to wit, for life or lives in being
and twenty-one years afterwards, the principal of so much of
the Brown estate as had come to her from her husband, for
the benefit of his and her children then living, and their de-
scendants, thus preserving the property, so far as she was
able, for the benefit of her descendants of the Brown blood,
so long as there should be any living to enjoy it, and only
on failure of all of them should the property revert to her
own right heirs, to wit, her own family."

Such being the evident scheme of the will, we now come to the consideration of the questions submitted as aforesaid. The main point of inquiry is whether the said infant son of Grenville R. Brown is entitled to the income arising from the share of said trust estate from which his father derived the income during his life, and also to have the rent for and principal of said Whitman Block, in the same way. The answer to this question depends upon the construction to be put upon the words "who shall survive me," found on page 7 of the printed will. In order to understand the connection in which this language is used, it seems necessary here to quote the clause in which it appears. It commences on page 5 of the codicil to said will, and is as follows :

"And as to and concerning the moiety of the rest and residue of my Real and Personal Estate not before devised, in trust, for my daughters Ann Mary B. Hawkins and Caroline M. C. Brown, I now give, devise and bequeath the one half part of all and singular, my real and personal estate whatsoever and wheresoever, at the time of my decease, including all Real Estate Hereafter acquired, unto the said William M. Bailey and William Grosvenor Junior the Trustees hereinbefore named, their heirs, executors, administrators and assigns, according to the nature and quality thereof respectively In trust, nevertheless, and to and for the ends, interests and purposes hereinafter expressed and declared, of and concerning the same ; to get in and receive the same, and to take full possession thereof, and as it may be necessary, or in the opinion of my said Trustees, be expedient, convert into money, by sale, leases, mortgage or hypothecation the whole or any part thereof, (excepting the one ninth part of the Whitman Block Estate devised in trust for the use of my son Grenville R. Brown) whether the same shall consist of Real or Personal Estate, and to lay out and invest the monies to arise from any getting in, conversion, sale, lease, mortgage or hypothecation of Real or Personal Estate, in Real Estate improved or unimproved, or in improving real Estate, or in good bonds, stocks or mortgages of Real, Personal or other Estates, or property, with power of varying or transposing

such investments, in their discretion, and generally to manage and order all the affairs and business relating to all the said Trust property ; and as often as once in every six months, or oftener in their discretion, to pay the net income of said moiety of the rest and residue of my Real and Personal Estate, not otherwise specifically devised to my said sons John Carter Brown and Grenville R. Brown in equal shares, for their respective lives, and after their respective deceases, either before or after my decease, then upon trust, for such of the children of my said sons respectively, as shall attain the age or respective ages of twenty one years, or shall die under that age leaving lawful issue living, at his, her or their deceases or respective deceases, and his, her or their heirs and assigns forever, if more than one, as tenants in common, but so nevertheless, that the respective child or children of each of my said sons, shall have his, her or their parents share or respective share only.

And as to such survivor or survivors of the children of my said sons, I declare that my said Trustees shall during the minority of such survivor or survivors, pay the income to which their parents would have been.entitled if living, in the discretion of my said Trustees, to him, her or them in equal shares, upon his, her or their own receipts, or to any Guardian, or other person acting as such, whether by appointment or not.    Or my Trustees may in their discretion apply said income, from time to time, as occasion may arise, according to the respective shares thereof, as hereinbefore stated, to the comfortable support and education of such survivors respectively, having due regard to their age, health, position and condition in life.    And for such disposition or application of said income this clause is my Codicil to my last Will and Testament shall be their full and sufficient authority, indemnity and discharge.

And if either of my said sons should die without leaving any child, who shall survive me and live to attain the age of twenty-one years; or die under that age leaving issue living at his or her decease ; then, as to the moiety or share of him so dying, In trust for the other of my said sons, during his

life, to be held subject to all the provisions of the trust, as applicable to the other moiety of said half part of the rest and residue, held in trust, for the other of my said sons, and after his decease for his child or children in the same manner in all respects as his original share. And if neither of my said sons should have a child, who shall survive me, and live to attain the age of twenty-one years, or die under that age leaving issue living at his or her decease; then as to the whole of said last mentioned trust premises, In trust for my said daughters, Ann Mary B. Hawkins and Caroline M. C. Brown, subject to all the provisions, powers, conditions, obligations, discretions and trusts, as are provided in my said Original Will respecting the half part, of all the rest and residue, of my Real and Personal Estate devised in trust, for my said daughters respectively.

Provided also that if my said sons respectively should alienate or dispose of the income, to which they are respectively entitled under the preceding trusts; or if by reason of the bankruptcy or insolvency of my said sons respectively, or by any other means whatsoever, the said income can no longer be personally enjoyed by my said sons respectively, but the same or any part thereof shall, or but for this provision would, belong to, or become vested in, or payable to some other person or persons; then the trusts hereinbefore expressed, concerning the said Income, or concerning so much thereof, as should or would have so become vested in, or payable to any other person or persons, other than my said sons respectively, as aforesaid, shall immediately thereupon cease and determine. And the same Income shall be applied by my said Trustees, during all the then residue of the life of my said sons respectively, in manner following, that is to say, upon trust, to pay and apply the said income, or such part thereof as aforesaid, to and for the support and maintenance, or otherwise for the use and benefit of, the wife, child or children, of my said sons respectively, or such one or more of such wife, child or children, and in such manner as my Trustees may, in their discretion, think proper; and as to such wife, for her sole and separate and inalienable

use And in default of any object of the last mentioned trust, at any period during the life of my said sons respectively, and when and so often as the same shall happen, then upon trust, from time to time, as long as such vacancy or want of objects shall continue, to accumulate and invest, the Income aforesaid, in augmentation of the principal or capital thereof, in the nature of compound interest, with power of changing investments as hereinbefore expressed. And in case at any time after my decease, such accumulation should cease to be lawful, then, upon trust, to apply the said annual produce and income or such part thereof as may not legally be accumulated during said want of objects, as aforesaid, in such and the like manner as the same would be applicable, under the ulterior trusts of my Original Will and this my Codicil to said Original Will.

Provided also that in case after the cessation of said Income, as to my said sons respectively, otherwise than by death as hereinbefore provided for, it shall be lawful for my said Trustees, in their discretion, but without its being obligatory upon them; to pay to, or apply to the use of my said sons respectively, or for the use of such of my said sons and his wife and family, so much and such part of the income, to which my said sons respectively would have been entitled, under the preceding trusts, in case the forfeiture hereinbefore provided for had not happened.

And I declare and my will is that in the event of the death of my Grandson Nicholas Brown, leaving no lawful issue living at the time of his decease, who would under the provisions of my said Original Will be entitled to the said trust property, both Real and Personal, then one half part of said trust property, both Real and Personal, shall remain in my said trustees, to be held by them, under the same trusts, as are provided in my said Original Will for one half part, of the rest and residue of my Estate Real and Personal, and given, in trust, for my two daughters aforementioned Ann Mary B. Hawkins and Caroline M. C. Brown, and the other half part thereof shall be held by my said Trustees under the trusts created by this my Codicil, for one half of the rest and

residue of my Estate, both Real and Personal, and given in trust for my two sons aforementioned, John Carter Brown and Grenville R. Brown and in each case, subject to all the limitations, provisions, powers, conditions, discretions, obligations and trusts as are provided in my said Original Will and in this my Codicil, and applicable to the trusts created for my said sons and daughters respectively, in every respect whatsoever.

And in case of the failure of all the objects of the several trusts, created by my said Original Will and this my Codicil, by death or otherwise, or the failure of issue of either, or all of my said children, then and in that case, I declare, that all the then remaining property, both Real and Personal, in the several trusts created in my Original Will and in this my Codicil, shall vest in and be distributed to, the persons who for the time being, shall be entitled to the same, under the Statute laws of the State of Rhode Island, then in force regulating the distribution of intestate Estates."

We think it is clear from this language, taken as a whole, that the testatrix did not intend to limit her bounty to her grandchildren who should be living at the time of her decease. She first gives the property in trust, carefully elaborating a scheme as to the investment and reinvestment thereof, thus evincing an intention to tie up the same in her descendants as long and as securely as possible. She provides for the payment of the net income thereof, only, to her two sons during their respective lives, and after their decease, whether that event should happen in her life time or not, then to such other children of her said sons respectively as should attain the age of twenty-one years, or should die under that age leaving lawful issue, and to their heirs and assigns forever, and then adds the significant phrase, " if more than one, as tenants in common, but so nevertheless that the respective child or children of each of my said sons, shall have his, her or their parents' share or respective share only."

As showing still further her intention that all of her grandchildren should take their respective parent's share, she adds

a clause providing to whom and in what manner the income shall be paid, and gives the trustees discretionary power to apply such income to the comfortable support and education of said grandchildren, having due regard to their age, health, position and condition in life.

Following this comes the particular clause which is the source of the difficulty regarding the proper construction of the will. It provides that "if either of my said sons shall die without leaving any children who shall survive me," &c. The primary meaning of the phrase "who shall survive me," taken by itself, is of course perfectly obvious, signifying the person or persons mentioned who shall be living at the time of the death of the testatrix. And it is a familiar rule, in the construction of wills, that the testator is presumed to have used the words in which he expresses himself in their ordinary acceptation, "unless from the context of the will it appears that he has used them in a different sense, in which case the sense in which he thus appears to have used them will be the sense in which they are to be construed." Wigram on Wills, p. 55. The primary meaning of the word "survive" is to live beyond the life or existence of; to outlive. But it also has a secondary meaning, according to some lexicographers, viz. to live after. See Worcester's Dic. and Johnson's Dic. To the contrary, however, see *Gee* v. *Liddell*, 2 L. R. Eq. 344.

We think it is clear that the testatrix could not have intended to use the word "survive" in its ordinary acceptation, but that she used the phrase "who shall survive me" in the sense of "who shall live after me." There has been much discussion in the books as to the proper construction of the words "survive" and "survivors" when used in wills, but it is now settled by numerous decisions that the same rule of construction will be applied to these words as to any others, viz. that they will be taken in their literal and ordinary import *unless there is something in the context or attending circumstances which shows that they were used in a different sense.* The following cases illustrate the construction which has been put upon the word "survivor :"

In *Re Palmer's Trusts*, L. R. 19 Eq. Cas. 320, Sir R. Malins says : "The rule is that the words of a settlement or of a will, as the case may be, shall be read in their general sense, unless the context shows distinctly that they were not intended to be so used. It has been argued that the word 'survivor' must in several passages, be read as 'survivor' in every part of the document. Now it is the rule of construction that words must be read so as to effect the intention of the parties, and there is no word more flexible than 'survivor.' It is a doubtful word, used very often without being understood, and frequently it is obvious from the context that it must have been intended to mean 'other' and not 'survivor.'"

In *Cross* v. *Maltby*, 20 L. R. Eq. 381, the same learned Judge said : "There is no magic in the word 'survivor.'" "The benefit of survivorship meant that it was to go over if any one died without issue." See also *Hurry* v. *Morgan*, 3 L. R. Eq. 155 ; *Wilmot* v. *Wilmot*, 8 Ves. 10 ; *Crowder* v. *Stone*, 3 Rus. 217 ; *Worcester* v. *Worcester*, 101 Mass. 127 ; *Nicoll* v. *Scott*, 99 Ill. 529 (536) ; 2 Jarman on Wills, 6 ed. * 1500 *et seq.* ; *Cooper* v. *Cooper*, 31 At. Rep. 1043 ; *Welch* v. *Huse*, 49 Cal. 506 (509).

The case of *Estate of William Clarke*, 3 De Gex, J. & S., p. 111, is precisely in point. There the testator made a bequest with a limitation over after a life estate "to the children of said Maria Clarke who shall survive me," etc., and it was held by the Lords Justices, on appeal, that the words "who shall survive me" meant "who shall be living after me," and that therefore the children of the life tenant who were born after the death of the testatrix were entitled to share in the estate under the bequest in question. See also *Boston Safe Deposit Co.* v. *Coffin*, 8 L. R. A. 740 and note ; *Dougherty* v. *Rogers*, (Ind.) 3 L. R. A. 847 and note.

A very strong, and we might almost say irresistible argument in favor of adopting the construction suggested, is that to give to said word "survive," in the clause under consideration, its natural and primary signification would unquestionably defeat the scheme of the will and codicil, by nullify-

ing every provision thereof with reference to the remainders over for the children of her surviving sons and daughters, because, as there were no such children living at any time during her life, there was no person in being at the time of her decease who would answer to the requirement of that part of the will, and hence any grandchildren who might be subsequently born would be absolutely cut off from all benefit thereunder. This argument applies also with equal force to the provision of the original will wherein one half part of said estate is given in trust for the daughters of the testatrix. She there directs that after the decease of her two daughters respectively, "the principal of their respective shares shall be equally divided among such of their respective children, if more than one, as shall survive me and live to attain the age of twenty-one years, or shall die under that age leaving issue living, to his, her or their heirs and assigns forever." Then follows a similar provision for the education and support of such of the daughter's children as is above set out for the children of her sons, with a remainder over in favor of said sons in case neither of her daughters should have a child who should survive the testatrix. So that, under a strict construction of the word "survive," no child born to either of said daughters subsequently to the death of the testatrix would be entitled to either the principal or income of his mother's share in the estate, but the same would go to the surviving aunt in the first instance, and after her decease to the uncles or the survivor of them. Furthermore, as argued by the learned counsel for the infant respondent, "such a construction would make this last mentioned clause entirely inconsistent with the clause which follows, and which is manifestly copied word for word from the provisions of the will of Sarah B. Eaton, of which Mr. Bailey, the scrivener of Mrs. Brown's will was a trustee, and which was at the time of the drafting of this will in litigation before the court. See *Nichols* v. *Eaton,* 91 U. S. 716. In that clause, which related to the disposition of the income in case of the bankruptcy of the daughters, there is a provision that if by any means the income, or any part thereof, could not be per-

sonally enjoyed by the daughters, the same should be applied during the residue of the life of said daughters respectively "to and for the maintenance and education or otherwise for the use and benefit of the children for the time being of my said daughters respectively, or said one or more of such children, if more than one, and in such manner as my said trustees in their discretion shall think proper."

"It will be observed that there is no limitation here to such children as should survive the testatrix in the strict sense of the word. The provision is 'for any or all of the children' of such daughters, whether born before or after the death of the testatrix. We should have then the astonishing conclusion that in one clause, providing for the remainder over of the trust fund, only such children should be entitled to take as were living during the life time of the testatrix, and that the children born afterwards should be excluded, and in the following clause that in case of the bankruptcy of either of the daughters any child born at any time might enjoy the whole income during the mother's life, but that immediately upon the mother's decease the whole property should go to the aunt or uncles." Such a result is both so unnatural and so diametrically opposed to the whole scheme of the testatrix in the disposition of her estate, as to leave no doubt in the mind of the court that it was never intended. Indeed, it is practically as clear from the will, taken as a whole, that the grandchildren of the testatrix were intended to be made the objects of her bounty as it is that her immediate children were included therein, and hence it cannot be reasonably supposed that the equality of benefit in that part of her estate which she desired the former to enjoy should depend upon the mere accident of their surviving her. She was an aged woman when she made her will, and had only one grandchild living at that time; and she must have known and appreciated the fact that grandchildren were liable to be born after her decease. And she not only had no reason for cutting them off, but, on the other hand, she had a strong incentive to include them in her bounty, as the living grandchild aforesaid was not favored by her; and hence it is wholly incredible that she

intended to prefer him to those who might be subsequently born to her children, against whom she cherished no antipathy. And yet, if strictly construed, the will would in effect accomplish this most unnatural result. It would disinherit the infant respondent, for whose father the testatrix · evidently had the full degree of maternal affection, and against whose offspring she could of course have no ill will, as he was not only not in being until long after her decease, but his father was not married even during her life.

Another argument, which strongly tends to support the view which we have taken, is that, as Nicholas Brown, the grandson of the testatrix, was only seven years, of age at the time of the making of the will, it is highly improbable that she intended to provide only for such of his children, in case he should have any, as should survive her. It was hardly within the bounds of reason that a person of her age should expect to live to see children born to her said grandson ; and yet, if the provision regarding his children should be strictly construed, it would have cut them off, if any had been born to him, from all participation in her estate.

Other arguments might be adduced in support of such a construction of this will as will effectuate the evident intent of the testatrix, but we deem them unnecessary. That she intended, by the use of the very incongruous provision "who shall survive me," to cut off the grandchildren who might be born after her death, after making such elaborate provision for them throughout the will, and also in view of the utter thwarting of her other express wishes, which she must have known would be accomplished thereby, is not only highly improbable but wholly incredible as well. She clearly meant that her grandchildren should take, and, as it is not a word or phrase in a will but the manifest intent of the testator which is sacred and ought to prevail, we feel called upon to hold that the questions submitted must be resolved in favor of said infant respondent.

But, again, even if we are in error in holding that the word "survive" in this will may be read "live after," as aforesaid, then we are of the opinion that, as the phrase "who ·

shall survive me" is clearly repugnant to the testatrix's intention as manifested in her will taken as a whole, it should be wholly disregarded, on the principle that particular expressions must yield to general intent. *Fisher, Petitioner, ante,* 53 ; *Peard* v. *Vose, ante,* 654 ; 1 Redfield on Wills, 447 and cases cited ; *Smith* v. *Bell,* 6 Pet. 68 ; *Ferrys Appeal,* 102 Pa. St. 207, (210) ; *Lottimer* v. *Blumenthal,* 61 How. Prac. R. 364 ; Jarman on Wills, Vol. 1, (6 ed.) p. 481 and cases cited. See also cases in note to *Masterson* v. *Townshend,* 10 L. R. A. 816. Nor do we think that, in the circumstances connected with the making of the will before us, which is confessedly a piece of patchwork, there is any rule of interpretation that would be violated by ignoring said phrase altogether. When the language used is unskillful or inaccurate, but the intent can be clearly collected from the instrument, such inapt language as is repugnant to the general intent may and ought to be rejected. *Jackson* v. *Hoover,* 26 Ind. 511 ; *Brimmer* v. *Sohier,* 1 Cush. 118.

We therefore decide that the complainants are authorized to pay over and apply the income arising from the share of said trust estate, from which said Grenville R. Brown derived the income during his life, for the benefit of said Grenville Paul Nicholas Brown, and to transfer and to pay over to him, when he shall arrive at the age of twenty-one years, the capital of said share.

We also decide that they are authorized to pay over and apply the income of the said share in the Whitman Block in the same way, and to convey said share to him when he shall arrive at the age of twenty-one years ; and that said John Carter Brown is not now entitled to any part of the income or rent aforesaid.

As to the question concerning the disposition of said principal and income in case said infant shall decease under the age of twenty-one years, with or without issue, we think it unnecessary now to determine.

*Thomas C. Greene,* for complainants.

*William G. Roelker, Arnold Green & Archibald C. Matteson,* for the several respondents.