This rule has been followed in many cases. See Wilson v. State, 136 Tex.Cr.R. 590, 126 S.W.2d 977; Gardner v. State, 44 Tex.Cr.R. 572, 73 S.W. 13; Duque v. State, 56 Tex.Cr.R. 214, 119 S.W. 687; Vol. 40, Corpus Juris Secundum, Homicide, § 11, p. 855, and cases there cited; also 8 A.L.R. p. 522, note.

Under this condition of the law, appellant attempted to make proof of gross neglect and improper treatment. Evidently under the circumstances here present, neglect or improper treatment could only be shown by the testimony of those whose training had equipped them to testify as experts in such matters, that is to say, by the testimony of a physician or surgeon; and we find Dr. Nanney's testimony in answer to such proposition. After having been familiarized with the circumstances surrounding this incident and the treatment of the deceased, the doctor's answer could only be that there was improper treatment present or that no such improper treatment was shown. We find his answer thereto to be that none such was shown, and the jury evidently followed such testimony.

We then advert to the trial court's charge and find that he gave in the charge to the jury a presentation of the law as above referred to, and we see no fault to find therewith.

The motion for a rehearing will be overruled.

HAWKINS, P. J., absent.

McGREDE et al. v. McGREDE et al.

No. 6258.

Court of Civil Appeals of Texas. Texarkana.

Feb. 8, 1947.

Rehearing Denied Feb. 20, 1947.

R. B. Levy and Cecil Storey, both of Longview, for appellants.

Geo. Prendergast, of Marshall, and W. A. Ray, of Longview, for appellees.

WILLIAMS, Justice.

J. G. McGrede owning a large estate died July 2, 1937, leaving a will executed by him on December 16, 1935, which was admitted to probate July 31, 1937. At the time he executed the will, and at the time of his death, he had five children, all married, the oldest being then thirty-one years of age. He had also at the time six grandchildren, the oldest then being nine years of age. After his death, and between May, 1939, and November, 1944, five more grandchildren were born, making eleven grandchildren living at the time the present litigation for the construction of the will was filed. No one of the grandchildren has married. No one of his daughters or daughters-in-law was pregnant at the time of trial.

In the construction of the will, the court held that the testator's intention as expressed and manifested in the will is that he gave all of his property which he owned at his death to all his grandchildren living and in being at the time the first grandchild becomes twenty-one years old, or marries, as a class; that is, the will speaks as of the time the first grandchild becomes twenty-one years of age, or marries, and that the class includes all grandchildren living and in being at the date the first grandchild becomes twenty-one years of age, or marries.

Appellants who were defendants below are Eloise McGrede and the other five grandchildren living at the times the will was executed and probated, being represented by their guardian ad litem and attorney and joined by J. H. McGrede, an executor. Appellees who were plaintiffs below are the five grandchildren born after the execution and probate of above will, being represented by their guardian ad litem and attorney and joined by Walter and G. E. McGrede, two of the executors.

The provisions of the will pertinent to an understanding of the question involved, and the sole point presented, read:

"2. I do give and bequeath to my beloved grandchildren who survive me all of my property of every kind and character real, personal or mixed.

"3. I have made provision for each of my children and they have, each, an income, so I deem it best to maintain the property which I own at my death by leaving it to my grandchildren, to be delivered to them as they become of age, or need the same for educational purposes or on account of sickness.

"4. Having full faith and confidence in my sons, G. E. McGrede, J. H. McGrede and Walter McGrede, I do appoint them as joint executors, without bond, and direct that they take charge of my property at my death, with full power of management and control, to do any and all things necessary to properly preserve the same, though I direct that they make no sales unless absolutely necessary to take care of my grandchildren.

"5. As each grandchild shall become of age, or marry, I direct my executors to deliver to such grandchild its proportionate share of my property, whatever it may be, less any charges for advancements for education or on account of sickness.

"6. If any grandchild should die before it reaches the age of twenty-one years or marries, then I do give and bequeath that portion of my property to the other grandchildren who survive that grandchild. In other words, I want my property to go to my grandchildren and not to the parent, or parents, surviving any grandchild who may be so unfortunate as to die.

"7. I desire and direct that my executors shall use their discretion in the handling and management of the property and in making advances to my grandchildren. In other words, if any granchild should at any time need money on account of sickness or for an education, or to get a start in life, before such child should reach the age of twenty-one years, then I direct that said executor may advance to said grandchild or grandchildren such sums of money

as may be necessary to take care of the immediate need, or such sums of money as may be necessary to complete such grandchild's education in any school that said grandchild may select, provided the said grandchild is actually keeping up with the work required in said school.

"Of course, such advancements made to any grandchild or to any of my grandchildren shall be charged against such grandchild's interest when that child becomes twenty-one years of age or 'shall marry. If any of my grandchildren should marry before they reach the age of twenty-one years, my executors, at their discretion, may turn over the whole of said grandchild's interest in my estate to such child, if they so desire, or make such other advancement to such grandchild who does marry before he or she reaches the age of twenty-one years as the executors may deem for the best interest of said grandchild or grandchildren.

"In case it shall be necessary to sell any of my property to divide among the grandchildren, then I direct that the sale shall be reported to the County Probate Court of the county where the property is situated, and that such court shall enter an order approving the sale, if the court deems it advisable for the sale to be made.

"I am trying to make provision to preserve my property for my grandchildren until they have reached the age of maturity, and yet to leave to my executors such discretion as I think best."

It is to be observed from the wording used in the second paragraph of the will, that the testator designated the beneficiaries of all his property to be "my beloved grandchildren who survive me." The primary meaning of the word "survive" is to live beyond the life or existence of; "to outlive, that is, to be alive at the time of a particular event or the death of a particular person, which event or person the other is to survive." 60 C.J. p. 1188; Vol. 40, Words and Phrases, Perm.Ed., Survive, pp. 892, 893; Bailey v. Brown, 19 R.I. 669, 36 A. 581, 586.

It is appellants' position to which we are in accord that the words "my beloved grandchildren who survive me" as used in the second paragraph, when interpreted in their ordinary acceptation, designate such of the grandchildren who were living on the date of the death of the testator to be the beneficiaries; that the words "who survive me" refer to those living at his death. Supp v. Second National Bank & T. Co., 98 N.J.Eq. 242, 130 A. 549; 69 C.J., Wills, Sec. 1271; 28 R.C.L. p. 264. Such a construction, it being a rational construction of paragraph 2, would support the further position of appellants that title to the estate passed immediately to the grandchildren then living on death of the testator and probate of the will, with the right to possession and distribution postponed to the contingencies mentioned in subsequent paragraphs of the will.

However, as stated in 28 R.C.L., Wills, Sec. 175, "The intention of a testator is to be collected from the whole will, and from a consideration of all the provisions of the instrument, taken together rather than from any particular form of words." 44 T.J., Wills, Sec. 135; 69 C.J. p. 233; Briggs v. Peebles, Tex.Sup., 188 S.W.2d 147, 149. The testator at the time he executed his will would and could expect in the logical course of physical events that other grandchildren besides the six then living would be born to his five children, the oldest of whom was then only thirty-one years of age. To interpret the will as urged by appellants would thereby disinherit a number of his grandchildren, a right which is vested in a testator. Such interpretation would say that the testator had the intent to say two of his grandchildren shall take but their two brothers or sisters shall not; that one of my grandchildren shall take but his three sisters and brothers shall not; and to a son who had no children at the time the will was made, your three children shall not take. The presumption is that the testator would treat all his grandchildren alike, Cox v. George, Tex.Civ.App., 184 S.W. 326; Crosson v. Dwyer, 9 Tex.Civ.App. 482, 30 S.W. 929, in the absence, as here, of anything to show or even intimate that the testator had any particular like or attachment to any grandchild, or any child.

Such an unnatural disposition of his property as would result under the posi-

tion urged by appellants magnifies the intent expressed to the contrary in the seventh paragraph, it, too, a part of the will, wherein the testator construes his own will with the expression of his intent from what he had theretofore stated in the will, that "I am trying to make provision to preserve my property for my grandchildren until they have reached the age of maturity." This declaration of his intent is in keeping with the sixth paragraph wherein he declares "if any grandchild shall die before he reaches the age of twenty-one or maries, then I give that portion * * * to the other grandchildren who survive (not the testator) that grandchild." This intent is further reflected in the 7th paragraph wherein he directs that "if any grandchild" should need funds for necessaries; if any advancements are made to "any grandchild"; if "any of my grandchildren" should marry; and if necessary to sell any property to divide among "the grandchildren." The will is absent of any express limitation to those then living, either by names or numbers, who may be supposed to have been known to the testator.

█ The will when construed as a whole, under the above observations, will support the construction placed thereon by the trial court that title to any of his estate should not vest in any grandchild until and unless that grandchild reaches twenty-one years of age or marries prior thereto; and that he bequeathed his whole estate to a class of persons, namely, such of his grandchildren who would be living at the happening of above mentioned future event. 44 T.J. pp. 802, 803; 28 R.C.L. pp. 265, 266. Until and unless the mentioned event came to pass, any grandchild could not take anything which he or she could dispose of by will or otherwise or which would descend to his or her heirs. In fact, until some grandchild reached twenty-one years of age or married, there is no grandchild in whom the estate could vest.

█ "The rule seems to be well settled that when, as in this case, there is a bequest of an aggregate fund to children as a class, and the share of each child is made payable on attaining a given age or mariage, the period of distribution is the time when the first child becomes entitled to receive his share * * *." Thornton v. Zea, 22 Tex.Civ.App. 509, 55 S.W. 798, 799, writ refused; Briggs v. Peebles, Tex. Sup., 188 S.W.2d 147. Here the oldest child becomes twenty-one years of age on March 7, 1947, at which time such of the grandchildren then living will share per capita in the estate.

The judgment is affirmed.

HARVEY, Justice (dissenting).

I respectfully dissent from the conclusions reached by the majority of this court herein. In my opinion the estate of the testator, J. G. McGrede, vested in the beneficiaries under his will immediately upon his death; that is, that title to his property vested in his six grandchildren living at the time of his death, each one's respective part to be delivered to him when he attained the age of twenty-one years, or married. The words "my beloved grandchildren who survive me" quite evidently meant those who were living as of the time of the testator's death. The common and usual meaning of the word "survive" in its intransitive form is "to remain alive"; transitively, it means "to live beyond the life of"; "to outlive or outlast"; "to live longer than." See Webster's International Dictionary; Century Dictionary. A survivor is one who outlives another person. The word presupposes the contemporaneous existence of one who continues to live and another who ceases to live. One cannot outlive another unless he was in being during the life of the one whom he is said to outlive. Had the testator meant for grandchildren who might be born after his death to participate under the terms of his will he easily might have so provided. The natural impulse of one viewing the facts of this situation from the human standpoint is an inclination to treat the future born grandchildren in the same category as those living at the time of the death of the testator. An answer to this, however, is the fact that after the oldest grandchild becomes twenty-one years of age, or in case of the marriage of one of them, the time at which the majority opinion holds that title vests under the will, there still might be born other grandchildren. Shall we say arbitrarily

that the testator meant that no title to his property vested under his will until some one of his grandchildren attained his majority, or married?

My view is that giving to the word "survive" its well-accepted meaning would be consistent with all other portions of the will. There is nothing in any portion of the will to indicate a different intent. For these reasons the judgment of the trial court should be reversed and the judgment rendered in favor of appellants.