DODGE, Appellant, v. SHERWOOD, Executor, et al.

In Banc, June 15, 1903.

1. **Wills:** SURVIVOR: MEANING. Perhaps no word ever employed in wills has given rise to more difficulties or to more diverse constructions than the word "survivor." It is, however, generally conceded that each case will depend largely upon the peculiar context in which the word is used in the particular will.

2. ———: ———: BEQUEST TO: CLASS. After making provision for his widow, the testator provided in the second item of his will: "I give to my three unmarried daughters, Burmah, Julia and Laura, each two thousand five hundred dollars. If either should die prior to marriage her part of the property goes to the survivors." Laura married, received her legacy and died, leaving issue. Burmah died unmarried, and bequeathed all her property to her sister Julia. Subsequently Julia died, unmarried, and devised her property to other relatives. The will gave nothing to either plaintiff or defendant, his only surviving children, except that by another clause he provided that if there should be an increase in his property, one-third thereof was to be divided among his children, one-third among his grandchildren, and the other third was to go to certain colleges. There is nothing in the context or scheme of the will that qualifies or explains in any way the letter or meaning of the second item. *Held*, that the second item clearly carves out a class of persons to whom the original gifts were intended to go and means that if either of the three daughters should die prior to marriage her part of the property was to go to the unmarried survivors of that class, and not to the survivors among his other children; and, therefore, when Laura got her share, married and died, leaving issue, Burmah's share, upon her death, unmarried, passed to Julia, who, thereupon, held her own share and the share she got from Burmah absolutely, and, hence, had full power to pass the same by her will to the legatees named.

Vol 176 mo—3

Appeal from Greene Circuit Court.—*Hon. Jas. T. Neville,* Judge.

AFFIRMED.

*Wm. M. Williams* for appellant.

If the word had been "survivor," it would have been clear what the testator intended, and no difficulties would have arisen as to his meaning, as it is.obvious that there could be but one survivor of the three persons mentioned in the item. But if we assume that the word "survivors" refers not only to the three sisters mentioned in the second item, but to the other children of the testator, mentioned in the ninth item of his will, then his meaning can be readily understood; because then there might well be "survivors" of those mentioned in the two items of the will, among whom the share of the deceased legatee could be divided. It will be noted that only in the event of the death of one of these daughters, prior to her marriage, is her share to go to the "survivors." In the event of marriage, the share of the married one was to go to her absolutely. So that, as under the second item of the will the share of the married one was to go to her absolutely, and as by that item the shares of those not married were to be placed in the hands of a trustee to hold for those unmarried, the clear implication is that the unmarried ones were not to take the property absolutely, but only to enjoy the usufruct thereof. But when it came down to the last unmarried daughter, and she died, what was to become of the property still remaining in the hands of the trustee? The will says it should go to the survivors; what survivors? Evidently the other children of the testator mentioned in another portion of the will. The control, by the trustee, of the property bequeathed, is wholly inconsistent with the idea that any absolute right to that property was designed to be bequeathed to those who remained unmar-

ried; such unmarried daughters were to get the use of the property thus bequeathed; that and nothing more. What the testator evidently contemplated as likely to occur, actually did occur, to-wit, one of the three daughters, Laura, did marry, and received her full share, and died without issue. After this, Burmah died unmarried in 1891 and Julia likewise died unmarried in 1896. Now, at the time of Burmah's decease, according to the terms of the will, her share went to the "survivors;" but at that time there were no "survivors," unless the testator's other children can be embraced within that term and description; and it is to be presumed that the testator had such contingencies in contemplation at the time he wrote his will. That the will was drawn by the testator without legal assistance is evident from its phraseology, and therefore it should receive a more liberal construction in consequence of being drawn *inops concilii*. Hall v. Stephens, 65 Mo. 676. It will be noted that the testator, though he gives absolutely her share to the daughter who marries, and though he apparently does so as to the daughters who remained unmarried, yet in the conclusion of the item he causes the property to be placed in the hands of a trustee. For what purpose? Evidently for the purpose that such trustee should devote the usufruct of the property to the benefit of the legatees respectively. If this construction be the correct one (and it was the one actually placed on it by the trustee during the lifetime of the legatees), then what is to be done with the *corpus* of the bequests upon the death of the last one of the legatees? It would seem from this that the testator would have died intestate as to such *corpus* (a construction not to be adopted if it can be avoided), unless we also conclude that the word "survivors" embraces all of his children named in the will; not only those named in the second item, but also in the ninth item of his will. And nothing is more common or more proper than that the whole will should be examined in order to determine

the intention of the testator, which is, after all, the pole
star of construction.   On this point an author of recog-
nized authority remarks:   ''The tendency, however, of
modern decisions (and good sense appears to require
it), is to read the different clauses in the will referen-
tially to each other, unless they are clearly independ-
ent.''   2 Williams on Extrs. (Am. Notes by Randolph
& Talcott), pp. 331, 332 and 333.   ''And when giving a
proper and practical construction to wills, technical
rules must yield to the obvious meaning of the testa-
tor, gathered from all parts of the instrument and as
illustrated by evidence of his situation and surround-
ings.   Carr v. Dings, 58 Mo. 404; Collier's Will, 40
Mo. 287; Allison v. Chaney, 63 Mo. 279.   All other
rules of construction are subordinate and auxiliary to
this leading and predominant principle.''   Small v.
Field, 102 Mo. 122; Schouler on Wills (2 Ed.), sec. 477;
2 Williams on Wills (Am. Notes), 334, 335.

## IN BANC.

ROBINSON, C. J.—The following opinion hereto-
fore rendered in Division One is hereby adopted as the
opinion of the Court in Banc.   *Valliant, J.,* not sit-
ting.

## IN DIVISION ONE.

ROBINSON, J.—This is an amicable proceeding
to have the will of Rev. Adiel Sherwood, D. D., con-
strued by a court of equity.   The plaintiff is the only
living daughter of the testator, and the defendant,
Thomas A. Sherwood, is his only living son, and is also
the executor of the estate of Julia L. Sherwood, who
was a sister to the plaintiff and himself.   The other
defendants are the legatees under the will of said Julia
L. Sherwood.

Briefly stated the admitted facts are, that Rev.
Adiel Sherwood died testate, possessed of a considera-

ble estate, which increased in value during administration thereon. The items of the will especially material to this inquiry are the second and ninth, which are as follows:

"2. I give to my three unmarried daughters, Burmah, Julia and Laura each two thousand five hundred dollars. Also to Burmah a feather bed, to Julia my watch, and to Laura forty dollars. If either should die prior to marriage her part of the property goes to the survivors. My executors will appoint a trustee or trustees to the property so it may not be squandered or expended in unsafe bargains.

"9. If there should be increase in my property to warrant it, I wish it to be divided among my children and grandchildren, that is, one-third to my children and one-third to my grandchildren, and one-third . . . to Shurtleff College, Kalamazoo, and Denifore University, Ohio."

Laura married, received her legacy and died, leaving issue. Burmah died, unmarried, and bequeathed all her property to her sister Julia. Subsequently Julia died, unmarried, and left a will, by which the defendant, Thomas A. Sherwood, is made the executor of her estate, and whereby she devised her property to the other defendants herein. Her estate consists almost entirely of the twenty-five hundred dollars bequeathed by her father to her and the like amount bequeathed by their father to her sister Burmah, and by the latter bequeathed to said Julia as aforesaid. The plaintiff, the only surviving daughter of Rev. Adiel Sherwood, contends that under the second and ninth items of the will this five thousand dollars so bequeathed to Burmah and Julia, passed at their death, unmarried, to herself, the plaintiff, and to her brother, Thomas A. Sherwood, the only surviving children of Rev. Dr. Sherwood, and that therefore the wills of her two said sisters were inoperative to pass any part of their respective legacies. The plaintiff further contends that the

term "survivors" in the second item of the will, must be construed in connection with the terms of the ninth item of the will, and when so referentially construed, the term "survivors" means all the children of the testator who are living at the time of the death of either Burmah or Julia, they dying unmarried. The circuit court held, however, that the term "survivors" as employed in the said second item of the will referred only to the class of persons named in that item, and therefore decided against the plaintiff's contention. Hence this appeal.

## I.

There is, perhaps, no word ever employed in a will that has given rise to more difficulties or to more diverse constructions than the word "survivor." Wood, V. C., in In re Gregson's Trusts, 33 L. J. Ch. 532, said: "Certainly this word 'survivor' is one that ought to be avoided by any person who is not a consummate master of the art of conveyancing, for I suppose no word has occasioned more difficulty." Theobald on Wills (2 Ed.), 503, classifies the numerous English cases construing the meaning of the word. Some cases hold that the word is to be construed the same as if the word "others" had been employed, while other cases hold that it ought not to be so construed "unless there is something in the context to indicate that such construction is necessary to effectuate the intention of the testator." It is, however, generally conceded that "each case will depend largely upon the peculiar context of the particular will." [29 Am. and Eng. Ency. Law (1 Ed.), p. 490, and cases cited in note 2.]

In Taaffe v. Conmee, 10 H. L. Cases l. c. 78, the lord chancellor, Lord Westbury, said: "The natural and obvious meaning of the word 'survivor' is not the person who shall survive or outlive a particular event, but, when it is applied to a class of persons, and individuals of that class are named, the natural and obvi-

ous meaning of the word is the longest liver of those who are named; and therefore, in this particular case, as in other cases, the word 'survivor' should, I think, be regarded not as referring to any particular event previously mentioned, but as referring to that which, as I have already observed, is the natural meaning of the word, namely, that individual person who, out of the individuals named, shall turn out to be the longest liver.''

In Waite v. Littlewood, L. R. 8 Ch. (App.) l. c. 73, the lord chancellor, Lord SELBORNE, after premising with the remark that: ''There can be nothing more certain than that every will is to be construed by itself, not with reference to other wills; and all the light that can be got from other decisions serves only to show in what manner the principles of reasonable construction have by judges of high authority been applied in cases more or less similar,'' aptly said that the word ''survivor'' does not precisely mean ''other,'' but rather conveys the idea of ''survivorship,'' and then construed a provision in the will in question in that case, in some respects bearing close similitude to the second item of the will here in question, as follows: ''No one could read the sentence in question as a whole and not see plainly and distinctly that the general intention of the testator was to keep the property together, and continually to subdivide the accruing shares between the same persons remaining who were to take the original shares, and to refer to the gifts of the original shares as the scheme which was to govern the devolution of the accruing shares.'' The lord chancellor also said: ''Moreover, it was quite manifest that the last of the daughters dying might die without leaving a child, in which case the word 'survivor' could not apply; and the children of more than one of them who might die leaving children might be living at the death of the last survivor of the daughters, and might afterwards die under age and unmarried.''

In the case of In re Palmer's Settlement Trusts, L. R. 19 Eq. Cas. 320, Sir R. MALINS, V. C., held that the word "survivor" in one clause of a settlement must be read as meaning the same as the word "other," in order to effectuate the clear intention of the parties, while the same word, in the same settlement, referring to the same fund, in another clause of the settlement, must be read in its natural sense, the learned vice chancellor saying: "Now it is the rule of construction that words must be read so as to effect the intention of the parties, and there is no word more flexible than 'survivor.' It is a doubtful word, used often without being understood," etc.

In Duryea v. Duryea, 85 Ill. 41, the court said: "Indeed, the authorities seem to hold there is no rule fairly deducible from the cases on this subject, that will justify the reading of 'survivor' as equivalent to 'other' except it is to be done whenever, from the context or other provisions of the will, it is rendered certain such must have been the intention of the testator.'

The will of Rev. Adiel Sherwood gives nothing to either the plaintiff or the defendant, Thomas A. Sherwood, except as they are included in the one-third bequeathed to the children of the testator, "If there should be increase in my property to warrant it," and except further as the plaintiff was devised an equal share with her sisters in such of the furniture as the widow did not elect to keep, and as she was given a share with her mother and sisters and brother in the testator's library.

The scheme of the will, which was clearly not drawn by a lawyer, was to give the widow for her natural life two thousand dollars and such of the furniture as she wished, and at her death so much of this bequest as she had not used for her support was left to the testator's grandchildren. Then the three unmarried daughters were given twenty-five hundred dollars each (with certain specified articles added) as set

out in the second item quoted. Then there was provision made for the children of the brother and of the two sisters of the testator. Then there was a legacy to the children of Sarah Mereck. Then there were specific devises to various religious and educational associations and institutions. Then his son Thomas A. Sherwood was appointed executor, with power to sell the real estate, and the testator's son-in-law, the husband of the plaintiff, was to aid the executor if he desired assistance. Then followed the ninth item of the will as herein quoted, by which in case there should be an increase in his property the testator devised one-third thereof to his children, one-third to his grandchildren and one-third to certain colleges.

There is, therefore, nothing in the ninth item or in any other item of the will, nor in the context or scheme of the will, that qualifies, explains, throws light upon or controls in any way the letter or the spirit and meaning of the second item of the will.

The second item of the will clearly carves out a class of persons to whom the original gifts are intended to go and creates a scheme to govern the devolution of the accruing shares, as was the case in Waite v. Littlewood, supra. The scheme contemplated a provision for each of the three unmarried daughters. It provided, "If either should die prior to marriage her part of the property goes to the survivors." That is, if Laura died unmarried her share was to go to the survivors; Burmah and Julia would clearly be the survivors of the class. But Laura married and received her share. Therefore, all the conditions and safeguards of the scheme were fulfilled as to her share. She then died. So she passed out of the class entirely. This left only Burmah and Julia in the class. When Burmah died, Julia was the only one of the class left. She could not fill the designation "survivors," for that implies the plural number. But she was all that was left of the class, and the scheme contemplated that this fund should

be kept in the class unless one or more of the benefi-
ciaries married. It might be argued, as it was pointed
out in Waite v. Littlewood, that all three of the daugh-
ters might die unmarried, in which case the word "sur-
vivor" could not apply. But this is completely an-
swered in Taaffe v. Conmee, 10 H. L. Cases l. c. 78,
where the devise was to three named persons and the
"survivor" as tenants in common and not as joint ten-
ants, and it was held to mean that upon the death of
one, the devise passed to the two survivors, and upon
the death of one of the two said survivors, the whole
devise passed to the one who turned out to be the longest
liver, and as there was no limitation over in case of
the death of all the members of the class, the last one
of the class that survived or outlived the others of the
class, took the whole devise absolutely, notwithstanding
the original devise only created a life estate in the mem-
bers of the class. Thus there is not only high prece-
dent for holding that the word "survivors" in such a
scheme in a will must be construed to refer to the per-
sons named in the scheme as the beneficiaries in the
proper antecedents, but such a construction accords per-
fectly with the natural meaning of the word when so
employed. There is every reason for holding that when
the testator used the word "survivors" in the second
item of the will he had reference only to his unmarried
daughters, Laura, Burmah and Julia, and not to any
other of his children. It is also plain that the testator
when framing the ninth item of his will did not con-
template that any part of the seven thousand five hun-
dred dollars, set apart in the second item of his will,
would ever be construed as an *increase* of his property.
In fact if it could be so construed the plaintiff and her
brother—the living children—would only get one-third
thereof and the other two-thirds would go, by the terms
of the ninth item, to the testator's grandchildren and
to the colleges named. Without invoking the referen-
tial effect of the ninth item, it is not contended that there

is anything anywhere else in the letter, context or scheme of the will that could be employed to give countenance to the contention that the word "survivors" in the second item of the will referred to all the children of the testator and not simply to the three unmarried daughters named in that item.

A very analogous case to the case at bar is that of Davidson v. Kimpton, 18 L. R. Ch. Div. 213, where Fry, J., said: "The question which arises is rather a peculiar one. The petitioner is the longest liver of the four daughters. [His Lordship read the gifts in question.] In my judgment there was an anxious desire on the part of the testator to give over the shares of his daughters in the £10,000, in the first place, in the event of their dying leaving issue, and, in the next place, in the event of their dying and leaving no issue. In the case of the death of a daughter without issue, he contemplates that her share shall go over to the survivors, or to the one survivor of the daughters. Inasmuch as a person can not be his or her own survivor, it remains to inquire whether the real meaning of the words is not 'longest livers, or longest liver' of the class of daughters. If the words are read in that way, the gift will operate exactly as the testator intended, viz., to give the share of the deceased daughter to three, two or one of the daughters, as the case may be. The gift would be to the persons who for the time being are properly described as the survivors of the class, that is, those members of the class who have survived the other members of the class. That, in my view, is the true meaning of the words, and it will apply to the petitioner. She has not survived the class of daughters, but she is the longest liver of the class. I might leave the case with this expression of my opinion. But the Master of the Rolls, in the very similar case of Maden v. Taylor, 45 L. J. Ch. 569, came to a very similar conclusion, and he was greatly influenced by the consideration that it was not likely that the testator should have intended that, if all

the nieces should die without issue, the longest liver of them should take the shares of her sisters absolutely, but should take her own share only for her life.''

The circuit court construed the will to mean that the fund so created by the second item passed in this way, that is, that Laura got her share and died, that upon Burmah's death, unmarried, her share passed to Julia, and thereupon Julia held her own share and the share she got from Burmah absolutely and hence had full power to pass the same by her will to the defendants named. This conclusion was right and the judgment is therefore affirmed.

All concur, except *Valliant, J.,* not sitting.